573 So.2d 1355 (1990)
The BANK OF SHAW, A BRANCH OF The GRENADA BANK, now known as Sunburst Bank
v.
John W. POSEY and Daniel R. Watkins, Individually, and d/b/a Delta Outdoorsman.
No. 07-CA-58862.
Supreme Court of Mississippi.
December 19, 1990.
*1356 Charles J. Swayze, Jr., James Y. Dale, Whittington Brock Swayze Firm, Greenwood, for appellant.
W. Stephens Cox, Merkel & Cocke, Clarksdale, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BLASS, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
Posey and Watkins brought suit in Bolivar County Circuit Court against The Bank of Shaw, a branch of the Grenada Bank, now known as Sunburst Bank (hereinafter referred to as The Bank of Shaw) claiming that promises for loans were made to them by one of its officers, Glenn Sandroni, and that the loans were not made as promised. The jury returned a verdict in favor of Posey and Watkins and The Bank of Shaw appeals presenting the following issues for review by this Court:
1. THE COURT ERRONEOUSLY INSTRUCTED THE JURY ON NEGLIGENT MISREPRESENTATION THROUGH INSTRUCTION P-1 AND THE COURT ERRONEOUSLY DENIED BANK'S MOTION FOR A DIRECTED VERDICT AT CONCLUSION OF PLAINTIFF'S CASE ON ISSUE OF NEGLIGENT MISREPRESENTATION.
2. THE COURT ERRONEOUSLY INSTRUCTED THE JURY ON THE ISSUE OF FRAUDULENT MISREPRESENTATION THROUGH INSTRUCTIONS P-2 AND P-3 AND THE COURT ERRONEOUSLY DENIED BANK'S MOTION FOR DIRECTED VERDICT AT THE CONCLUSION OF PLAINTIFF'S CASE SINCE PLAINTIFFS DID NOT MEET THEIR BURDEN BY CLEAR AND CONVINCING EVIDENCE.
3. THE COURT ERRONEOUSLY INSTRUCTED THE JURY AS TO DAMAGES THROUGH INSTRUCTION P-6.
4. THE COURT ERRED IN ALLOWING TESTIMONY PERTAINING TO MENTAL ANGUISH SUFFERED BY POSEY AND WATKINS.

STATEMENT OF THE FACTS
In the fall of 1983, John W. Posey and his step-son, Danny Watkins, discussed the idea of opening a quality sporting goods store to be known as The Delta Outdoorsman in Cleveland, Mississippi. Posey, forty-six *1357 years old and unable to read or write, was to arrange the financing and Watkins, thirty years old and without retail experience, was to manage the store. Watkins' wife was to be the bookkeeper.
Posey and Watkins contacted Glenn Sandroni, Vice President of The Bank of Shaw, about financing, advising him that they needed approximately $100,000.00 to $125,000.00 in capital to begin the venture. They alleged that Sandroni thought the store was a good idea and that he entered into an oral agreement to lend them $125,000.00 for the first year's start up and operating costs and to later convert the loan to a five-year loan, payable in monthly installments. Sandroni denied making any commitment for the amount of $125,000.00 or for any long-term loan.
In February of 1984, Posey and Watkins began borrowing money from The Bank of Shaw for The Delta Outdoorsman.[1] By the time the business had been in operation for one month, it was in debt to the Bank in the amount of $134,000.00 plus interest. The loans were evidenced by notes executed in favor of the Bank as follows:
1. December 21, 1983, a note for $20,000.00 executed by John Posey and Daniel Watkins, which was due on April 15, 1984, and was secured by an assignment on a SMMA (Sunburst Money Market Account) account;
2. January 12, 1984, a note for $15,000.00 executed by Posey and Watkins, which was due on June 1, 1984, and was secured by a separate financing statement;
3. February 10, 1984, a note for $10,000.00 executed by Posey, which was due on June 1, 1984, and was secured by a financing statement including a KW T10 Trailer and a J10 PK truck;
4. February 20, 1984, a note for $10,000.00 executed by Posey and Watkins, which was due on June 1, 1984, and was secured by merchandise and inventory;
5. March 2, 1984, a note for $15,000.00 executed by Posey, which was due on June 1, 1984, and was secured by a financing statement;
6. March 14, 1984, a note for $7,000.00 executed by Posey, which was due on June 1, 1984, and was secured by a financing statement;
7. March 15, 1984, a note for $10,000.00 executed by Posey, which was due on June 1, 1984, and was secured by a financing statement;
8. April 5, 1984, a note for $10,000.00 executed by Posey, which was due on June 1, 1984, and was secured by financing statements;
9. April 13, 1984, a note for $20,000.00 executed by Posey and Watkins, which was due on October 1, 1984, and secured by an assignment on a SMMA; and
10. April 13, 1984, a note for $17,000.00 executed by Posey, which was due on October 1, 1984, and was secured by a financing statement and a first lien on a home satellite system.
The Delta Outdoorsman opened for business on March 14, 1984, and despite having received the substantive loans noted before that date, had not paid bills owed to its suppliers. The trial developed that inventory ordered and received in February of 1984, before the store had opened, had still not been paid for.
In March or April of 1984, Posey and Watkins applied for a direct loan in the amount of $115,000.00 from the Small Business Administration (SBA); their application was rejected. They hired an accountant, Robert Neal, to attempt to correct the deficiencies in the original application and resubmitted the application for $115,000.00. In August, that resubmission was rejected.
The business operated at a loss for the entire time it was open from March 14, 1984 to March 15, 1985. At no time during its operation did the business show a profit or generate the income necessary to meet *1358 its operating costs, or to service its current debt, or the long-term debt which Posey and Watkins sought to incur. Nevertheless, after having been turned down for a direct loan of $115,000.00, Posey and Watkins decided to apply to the SBA for a 90% loan guarantee on a loan of $362,473.49. This loan was to be used to pay off the existing debt to the Bank and to purchase a lot and erect a building to house The Delta Outdoorsman, a convenience store, a gas station, and a car wash.
When the amount of loans from the Bank to the business had exceeded $100,000.00, the President of The Bank of Shaw, Louis Vause, instructed Sandroni not to make any further loans to The Delta Outdoorsman. Sandroni, however, continued to lend money for the business without the knowledge or approval of the Bank.[2] From May through August, Sandroni disbursed $32,100.00 to Posey for the business.
In September of 1984, Posey and Watkins stopped paying rent on the building in which the store was housed and they never paid another month's rent.
On December 4, 1984, Posey and his wife executed a note to the Bank for $157,473.49 consolidating previous loans plus interest and executed a second deed of trust on their residence they had purchased in July of 1984, as security for the loan. Posey alleged that Sandroni told him and his wife that the second deed of trust was needed only to support their application for the SBA loan guarantee. Sandroni contended that he told the Poseys that the deed was needed to secure the loans already made plus interest due on those loans, as well as to improve the SBA loan guarantee application. Posey alleged that Sandroni told them that if the SBA did not make the loan, The Bank of Shaw would lend them the amount of money they had sought from the SBA on the same terms and conditions. Sandroni denied ever having made such a promise.
On January 11, 1985, Posey executed a note to the Bank and received $23,070.00, the last of the loans arranged by Sandroni without the Bank's knowledge. Later in January, when Posey and Watkins learned that the SBA had rejected the application for the loan guarantee and that The Bank of Shaw would not lend them any further funds or extend the term of their existing debts, Posey and Watkins began liquidating the store's inventory.
In February, they filed this suit against the Bank claiming damages as a consequence of the Bank's (1) breach of contract, (2) negligent misrepresentation, and (3) fraudulent misrepresentation. On March 10, 1985, Mrs. Sostes, holder of the first deed of trust on the Posey residence, foreclosed on the first deed as a result of the Poseys' having voluntarily stopped making monthly payments on their note to her. On March 15, the sheriff, pursuant to a writ of execution from the landlord, padlocked the doors of The Delta Outdoorsman. Posey and Watkins filed bankruptcy petitions on March 29, 1985. Sostes' foreclosure was voided by the bankruptcy court and she later foreclosed a second time. In April, with the approval of the bankruptcy court, The Bank of Shaw took possession of the store's inventory and sold it at auction with a net return of $49,241.27.
Prior to trial, the court granted summary judgment to the Bank on the issue of breach of contract on the ground that the terms of any oral contract were so vague and uncertain as to be unenforceable. The case was submitted to the jury on the theories of negligent and fraudulent misrepresentation and the jury returned a verdict in the amount of $240,000.00 for Posey and $162,000.00 for Watkins. The trial court offset the verdict by $210,020.91, the amount of the Bank's counterclaim for principal and interest owed to the Bank by Posey and Watkins.

*1359 STATEMENT OF THE LAW
Because we find the first two issues dispositive of this appeal, only those issues will be addressed.

I.

DID THE TRIAL COURT ERR IN ALLOWING INSTRUCTION P-1 AND DENYING THE BANK'S MOTION FOR DIRECTED VERDICT, BOTH MATTERS RELATING TO THE ISSUE OF NEGLIGENT MISREPRESENTATION?
In the first issue presented to this Court for review, The Bank of Shaw argues that the trial court erred in instructing the jury on the issue of negligent misrepresentation, through instruction P-1, and erred in denying the Bank's motion for a directed verdict on that issue. Instruction P-1 instructed the jury as follows:
Negligence is the failure to use reasonable care. Reasonable care is that degree of care which a reasonably careful person would use under like, or similar, circumstances. Negligence may consist either in doing something that a reasonably careful person would not do under like, or similar, circumstances, or in failing to do something that a reasonably careful person would do under like, or similar, circumstances.
If you, the jury, find by a preponderance of evidence that The Bank of Shaw, by and through its agent, Glenn Sandroni, negligently misrepresented to John Posey and Danny Watkins that The Bank of Shaw would provide them short-term interim financing and would thereafter provide long-term financing either directly or in conjunction with the SBA and the Defendant Bank failed to provide such financing and that such representation was material and that in so representing, Sandroni failed to exercise that degree of diligence and expertise that the public is entitled to expect of a reasonably competent bank officer and that Posey and Watkins relied upon Sandroni's misrepresentation and as a result of reasonable reliance John Posey and Danny Watkins suffered damages;
Then you should find for the Plaintiffs John Posey and Danny Watkins on the issue of negligent misrepresentation.
However, if you believe that the Plaintiffs have failed to prove any one of these elements by a preponderance of the evidence in this case, then your verdict shall be for the defendant.
The Bank of Shaw contends that the instruction was erroneously given because:
(1) Posey and Watkins' argument, in regard to the interim financing, rests entirely on incompetent oral testimony in violation of the parol evidence rule.[3]
(2) The alleged misrepresentation concerning long-term financing was not a representation about an existing fact but was promise of future conduct which will not support an action for negligent misrepresentation.
According to Posey and Watkins, the negligent misrepresentation occurred when Sandroni, as an officer of The Bank of Shaw, allegedly (1) committed to lend them approximately $125,000.00 to be invested in their new business and represented to them, that at the conclusion of a one-year period, a renewal note of all interim loans would be made financing the principal and interest for a five-year period; and (2) advised Watkins and Posey that, if the SBA rejected their loan application, The Bank of Shaw would lend them $362,000.00 on the same terms and conditions as they were seeking from the SBA.
*1360 This Court, in First Money, Inc. v. Frisby, 369 So.2d 746 (Miss. 1979), adopted the view that:
The basis for damages resulting from negligent misrepresentation is the lack of care; the basis for damages resulting from fraud is the want of honesty. See Restatement of the Law of Torts (Second) sections 549 and 552 (1977). The lack of care in negligent misrepresentation and the want of honesty in fraudulent misrepresentation in business transactions give rise to distinct causes of action, the one in tort, the other in fraud.
First Money, Inc. v. Frisby, 369 So.2d 746, 750 (Miss. 1979). In order to recover on a theory of negligent misrepresentation, Posey and Watkins were required to prove by a preponderance of the evidence:
(1) a misrepresentation or omission of a fact;

(2) that the representation or omission is material or significant;
(3) that the person charged with the negligence (here, Sandroni, the loan officer) failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons;
(4) that they reasonably relied upon the bank officer's misrepresentation or omission;
(5) that they suffered damages as a direct and proximate result of such reasonable reliance.
Berkline Corp. v. Bank of Mississippi, 453 So.2d 699, 702 (Miss. 1984).
We agree with The Bank of Shaw that the first element of negligent misrepresentation was not proven at trial and that the trial court should not have allowed that issue to go to the jury. It is true that there was a dispute of fact as to whether or not Sandroni made the representation that the plaintiffs claim he made. It is also true, however, that even if he had made the representation, it was a promise of future conduct and not a statement of fact sufficient to constitute the kind of representation which would support a claim of negligent misrepresentation. It is well settled law that, except in cases of fraud, the first element of the tort of negligent misrepresentation must involve a representation concerning a past or present fact. Jury instruction P-1 improperly instructed the jury that if Sandroni "negligently" made a promise of future conduct, then the Bank was liable to Posey and Watkins for any damages which flowed from their reliance on that promise. The promise of future conduct is, as a matter of law, not such a representation as will support recovery under a theory of negligent misrepresentation. This Court has made it clear that even in cases where fraud is alleged, a promise of future conduct does not meet the requirement of a "representation" unless the promise was made with the present intent not to perform:
[F]raudulent representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, as facts, and cannot consist of promises, except in some cases when a contractual promise is made with the present undisclosed intention of not performing it.
McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1037 (Miss. 1990) quoting Credit Industrial Co. v. Adams County Lumber and Supply Co., 215 Miss. 282, 290, 60 So.2d 790, 794 (1952), quoting McArthur v. Fillingame, 184 Miss. 869, 876, 186 So. 828, 829 (1939). See also Shogyo International Corporation v. First National Bank of Clarksdale, 475 So.2d 425 (Miss. 1985) (the first element necessary to recovery on a theory of negligent misrepresentation is that the representation concern a fact, as contrasted with an opinion). This Court's view that a representation of a past or present fact is necessary to an action for misrepresentation is consistent with the position taken in other jurisdictions. See Margrove Incorporated v. Lincoln First Bank of Rochester, 54 A.D.2d 1105, 388 N.Y.S.2d 958 (N.Y. 1976) (a future promise does not qualify as an existing material fact under the elements of negligent misrepresentation); Murray v. Xerox Corporation, 811 F.2d 118 (2nd Cir.1987) ("negligent misrepresentation claims, all suffer from a common defect. Promises of *1361 future conduct are not actionable as negligent misrepresentations.").
Having determined that it was error to grant instruction P-1, The Bank of Shaw's claim that its motion for directed verdict should have been granted must now be examined. A motion for a directed verdict allows "the court to determine whether there is any question of fact to be submitted to the jury and whether any verdict other than the one directed would be erroneous as a matter of law." Comment to Rule 50(a) Miss.R.Civ.P. In paragraph thirteen of their complaint, Posey and Watkins stated that the negligent misrepresentation occurred when Sandroni allegedly promised to provide financing to their business. The proof at trial was the same effect. Since Watkins and Posey predicated their claim of negligent misrepresentation on a promise of future conduct, they failed to prove an essential element of their claim and the trial court should have granted The Bank of Shaw's motion for a directed verdict on the issue of negligent misrepresentation at the close of the plaintiff's case-in-chief.

II.

DID THE TRIAL COURT ERR IN ALLOWING INSTRUCTIONS P-2 AND P-3 AND DENYING THE BANK'S MOTION FOR DIRECTED VERDICT, BOTH MATTERS RELATING TO THE ISSUE OF FRAUDULENT MISREPRESENTATION?
In this issue The Bank of Shaw contends that the trial court erred in instructing the jury on the issue of fraudulent misrepresentation, through jury instructions P-2 and P-3, and also erred in denying the Bank's motion for a directed verdict on the issue. Instructions P-2 and P-3 were given to the jury as follows:
Instruction P-2
If you find from the clear and convincing evidence in this case that;
1. The Bank of Shaw, by and through its agent, Glenn Sandroni, falsely represented to John Posey that a Deed of Trust on his real estate was necessary in order to apply to SBA for a long term loan of $362,000.00 when the said Glenn Sandroni knew that such loan application was sure to be denied and his real motive was to obtain for the bank additional collateral covering loans and interest in the amount of $157,000.00 existing prior to December 4, 1984; and
2. That said misrepresentation was a material fact which induced John Posey to execute the Deed of Trust;
3. That The Bank of Shaw, by and through its agent, Glenn Sandroni, knew this representation to be false or recklessly disregarded its truth or falsity; and
4. That The Bank of Shaw, by and through its agent, Glenn Sandroni, intended to deceive John Posey by means of this representation; and
5. That John Posey were [sic] ignorant of the falsity of Glenn Sandroni's representation; and
6. That John Posey reasonably relied upon the truth of Glenn Sandroni's representations; and
7. That John Posey was injured as a consequence of his reliance and his execution of the Deed of Trust.
Then you should find for the Plaintiff John Posey with respect to the issue of fraud.
However, if you believe that the Plaintiffs have failed to prove any one of these elements by clear and convincing evidence, then your verdict shall be for the Defendant.
Instruction P-3
If you find from the clear and convincing evidence in this case that
1. The Bank of Shaw by and through its agent Glenn Sandroni falsely represented to John Posey and Danny Watkins that they should process an application with the SBA for a 90% loan when Sandroni had personal knowledge that such 90% guarantee application was sure to be denied and his real motive was to obtain for the bank additional collateral covering loans and interest in the amount of $157,000.00 existing prior to December *1362 4, 1984 and/or that the bank would make the $362,000.00 loan applied for to SBA if the SBA did not; and
2. Such misrepresentation was a material factor in causing the application to be processed by Watkins; and
3. That The Bank of Shaw, by and through its agent Glenn Sandroni, knew the representation concerning the advisability of such application was false or recklessly disregarded its truth or falsity; and
4. That the Bank, through its agent, intended to deceive Watkins and Posey; and
5. That Watkins and Posey were ignorant of the falsity of Sandroni's representation; and
6. Watkins and Posey reasonably relied upon the truth of Sandroni's representation; and
7. Watkins and Posey had a right to rely on this representation; and
8. That Watkins and Posey were damaged as a consequence of such reliance, then you should find for both Watkins and Posey on the issue of fraud.
However, if you believe that the Plaintiffs have failed to prove any one of these elements by clear and convincing evidence, then your verdict shall be for the Defendant.
The Bank of Shaw claims that these instructions were erroneous because the requisite clear and convincing evidence of each of the elements of fraudulent misrepresentation was not proved.
In order to recover on a theory of fraudulent misrepresentation, the plaintiffs must prove, by clear and convincing evidence, the following elements:
(1) a representation;
(2) its falsity;
(3) its materiality;
(4) the speaker's knowledge of its falsity or ignorance of the truth;
(5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated;
(6) the hearer's ignorance of its falsity;
(7) his reliance on its truth;
(8) his right to rely thereon; and
(9) his consequent and proximate injury.
Ezell v. Robbins, 533 So.2d 457 (Miss. 1988); Franklin v. Lovitt Equipment Company, Inc., 420 So.2d 1370, 1373 (Miss. 1982); See also Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984). If the plaintiffs failed to put on sufficient evidence to create an issue of fact for the jury as to any of the above elements, then the issue of fraud should not have been presented to the jury. The evidence at trial, as discussed below, failed to present the requisite clear and convincing evidence that any fraud on the part of Sandroni was the cause of any injury to Posey and Watkins. Thus, the issue should not have been submitted to the jury.
Posey and Watkins claim that Sandroni's fraudulent representations consisted of Sandroni's statements that he (1) would lend the business $125,000.00 over the first year and would consolidate the first-year loans into a long-term note; (2) would lend $362,000 if the SBA loan guarantee was rejected; and (3) would use the second deed of trust on the Posey residence only to improve the SBA loan application. They claimed at trial that, as a proximate consequence of these representations, they suffered combined damages in the amount of $422,700.00 which included:
$210,021.90 for all debts owed to The Bank of Shaw
$108,806.00 for debts owed to other creditors
$2,000.00 for debt owed to the accounting firm which had prepared the SBA applications
$20,000.00 for loss of capital which Posey had put into the business
$10,000.00 for the value of Posey's truck he had used as security for a loan
$16,500.00 for the value of a trailer which he had used as security for a loan
$23,750.00 for the loss of one half of the equity in the Posey's residence
$28,000.00 for the loss of the cash investment in the business by Watkins
Even assuming, for the sake of argument, that Sandroni had made all of the *1363 representations which are attributed to him, the evidence is far from clear and convincing that the failure of The Delta Outdoorsman and the resulting financial difficulties of Posey and Watkins were the result of Sandroni's representations. It is obvious that The Delta Outdoorsman was a losing proposition from the beginning. The evidence raised serious doubt that either partner invested any of his own funds in the business and showed that Posey and Watkins were in default on their accounts before they even opened for business. The business never made a profit, even in its best months, despite the fact that Sandroni disbursed a greater amount of funds than Posey and Watkins allege he promised. The Delta Outdoorsman (Posey and Watkins) failed to pay the rent for seven straight months. Having received all of the first-year loans that they asked for, Posey and Watkins were nevertheless unable to show that the business could or ever would be a profitable venture. There were several stores in Cleveland selling essentially the same merchandise and several of those stores, because of greater volume, could sell at significantly lower prices than could The Delta Outdoorsman. At trial, Posey acknowledged that the business could not have generated the $8,000.00 per month which would have been required to service the debt of $362,373.49 and probably could not have generated the $3,000.00 per month required to service the debt of $157,473.49. Given these facts, it is not possible to say that Posey and Watkins proved, by clear and convincing evidence, that the business's failure and their attendant losses were attributable to any fraudulent representations by Sandroni or any actions by the Bank.
An examination of the alleged fraudulent representations shows that not only did Posey and Watkins fail to prove they were damaged by any such representations, they also failed to prove other essential elements of fraud by clear and convincing evidence.
First, Posey and Watkins claimed that they were damaged by Sandroni's statement, made before they went into business, that he would lend them $125,000.00 and later convert first-year interim loans to a long-term note. Sandroni denied making any promise to lend that amount and any promise of long-term financing. However, the short-term loans were advanced. Prior to any request for converting the debt to long-term debt, there was a failure known to The Bank of Shaw and to the plaintiffs, a failure to pay for inventory, to pay rent, or to conduct The Delta Outdoorsman business in an acceptable business-like manner. This Court will not require a financial institution to lend funds to a failed business in contradiction to good judgment and in detriment to the resources of the Bank, a public institution and a private investment. Even had he made the representations, they both were promises of future conduct which would not undergird recovery unless there were also clear and convincing evidence that the promises were made with a present, undisclosed intention not to perform. Posey and Watkins failed to put on any such proof.
Second, Posey and Watkins claimed that their financial woes were the result of Sandroni's telling them that the second deed of trust secured on December 4, 1984, was only for the purpose of improving their SBA application and that if the SBA application were rejected, he would tear up the deed of trust and the Bank would lend them $362,000.00. The alleged representations concerning tearing up the deed and the Bank's lending the $362,000.00 were also promissory in nature and, in order to prevail, Watkins and Posey were obliged to prove, by clear and convincing evidence, an undisclosed intention not to perform. We do not think that they proved such an intention. Even, however, if the representations were made with such an intention, we do not think that Posey and Watkins proved, by clear and convincing evidence, that they had a right to rely on the truth of such representations. Posey and Watkins knew that the business was not paying its suppliers, rent, or debt service. They had been twice turned down by the SBA for a direct loan of $115,000.00 because their financial situation would not warrant a loan *1364 in that amount. It seems clear that they knew that the business could not support any further debt and that they could not have reasonably relied on any promise of a loan in more than double the amount of the loan for which they had already been twice refused. If Sandroni had made the promise and had made the loan, it is also clear that, because the business could not have supported any further debt, the eventual outcome would certainly have been the same  the loss of any capital the owners may have invested along with the loss of assets used as collateral for the interim loans.
Posey claimed that Sandroni fraudulently induced him and his wife to execute the second deed of trust on their residence to secure the consolidated note of $157,473.49 and that, as a result, Posey lost his portion of the equity in his home. When the Poseys received the rejection from the SBA of their loan guarantee and learned that the Bank would not make a long-term loan, they voluntarily stopped paying the notes due on the first deed of trust and it was the first deed of trust holder, and not the Bank, who foreclosed on the property. Since The Bank of Shaw did not foreclose on their second deed of trust and subsequently released the second deed of trust on the Posey residence, any loss of equity in his residence is not the result of Posey's having given a deed of trust to secure his consolidated note at The Bank of Shaw.
In sum, the trial court erred by allowing the issues of negligent and fraudulent misrepresentation to be considered by the jury because the evidence offered by Posey and Watkins was wholly insufficient to support a verdict in their favor. We, therefore, reverse and vacate the jury award in favor of Posey and Watkins in the amount of $240,000.00 and $160,000.00, respectively, and render judgment in favor of The Bank of Shaw.
As to the set off awarded by the trial court in favor of The Bank of Shaw on its counterclaim in the amount of $210,020.91, we likewise reverse, vacate, and render judgment in favor of Posey and Watkins.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., and SULLIVAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
HAWKINS, P.J., and PRATHER, ROBERTSON and ANDERSON, JJ., not participating.
NOTES
[1] Watkins claimed to have invested $28,000.00 of his own money in the business, but there was no evidence of such an investment apart from his assertion. A loan officer from the Small Business Administration testified that a loan application submitted to that agency by the business claimed an original owner investment of $35,000.00 but that there was no evidence of such an investment in the financial documents he received with the loan application.
[2] Sandroni submitted to the Bank fictitious notes with forged signatures of persons other than Posey and Watkins to support the monies disbursed. He also obtained notes from John Posey d/b/a The Delta Outdoorsman for all the funds which were received by Posey as follows: $5000.00 on May 24, 1984; $9,100.00 on June 15, 1984; $8,000.00 on June 21, 1984; $10,000.00 on August 27, 1984; and $23,070.00 on January 11, 1985.
[3] It is not necessary to address this issue since the Court finds that the plaintiffs did not prove the essential elements of negligent misrepresentation. It should be noted, however, that the plaintiffs do not contest the enforceability of the notes executed in favor of the bank and make it clear on appeal that the evidence about long-term financing was in no way intended to alter the notes. (Appellees' Brief at 26). Parol evidence would not have been admissible to alter the executed notes but was admissible, in connection with the allegation of fraud, to prove that promises were made with no present intention to perform. Franklin v. Lovitt Equipment Co., Inc., 420 So.2d 1370, 1373 (Miss. 1982).