# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-02023-SCT

*DANNY HOLLAND*

*v.*

*THE PEOPLES BANK & TRUST COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2007 |
| TRIAL JUDGE: | HON. L. JOSEPH LEE |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT Q. WHITWELL |
| ATTORNEYS FOR APPELLEE: | SCOTT R. HENDRIX |
| | L. BRADLEY DILLARD |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 12/11/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Danny Holland filed suit against Renasant Bank f/k/a Peoples Bank & Trust Company on or about November 20, 1998, in the Circuit Court for the Second Judicial District of Panola County, alleging negligent and fraudulent misrepresentation, breach of fiduciary duty and breach of covenants of good faith and fair dealing. Holland sought compensatory damages in the amount of $5,000,000 and punitive damages in the amount of $10,000,000.

Upon the trial court's grant of summary judgment in favor of the Bank, Holland appealed to us. Finding no error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     The business relationship between Danny Holland and Renasant Bank f/k/a Peoples Bank & Trust Company began in February 1996. Between February and April 1996, the Bank made various loans to Holland at a total of more than two million dollars, all of which were collateralized with real estate, equipment, cattle, and horses, as well as property in Lafayette County. This included a $500,000 revolving line of credit that Holland sought to use for expenses associated with his cotton brokerage business. The parties dispute whether the Bank by and through its employee, William Jeffreys,[1] also promised to loan Holland additional funds for the purpose of covering margin calls in commodities trading. Holland contends he informed William Jeffreys that in the event cotton prices dropped below eighty cents a pound, he would need an additional $200,000, for a total line of credit in the amount of $700,000, for the purpose of covering margin calls, and that Jeffreys orally promised to extend the line of credit for that purpose. On the other hand, the Bank maintains that Holland asked for an extended line of credit in the amount of $100,000 for the purpose of covering margin calls, which the Bank denied due to Holland not being able to produce more collateral. Additionally, the Bank contends that Jeffreys did not have loan authority for such

---

[1]Sometimes spelled "Jeffries" in the record.

2

an amount and that a loan in this amount would have had to have been approved by the Bank board.

¶3. Holland desired to sell his Yocona Bottom Lafayette County property (hereinafter the "Lafayette County property"). The breach-of-fiduciary-duty allegations stem from the sale of this property. Holland had hoped to arrange with the bank a section 1031[2] tax benefit land swap wherein he would find replacement property for the Yocona Bottom property to avoid a capital gains tax. William Jeffreys, on behalf of the Bank, was to act as escrow agent for the transaction. The Bank contends that this agreement was negotiated, but was never finalized because the Bank asked for, but never received, more collateral from Holland to cover the additional loan he needed to secure the replacement property. The Bank further contends that the sale proceeds were received by the Bank, but never deposited in an escrow account because there was no agreement to that end. According to the Bank, it held the check to give Holland opportunity to produce more collateral for the proposed escrow exchange. When additional collateral did not materialize, the Bank offset the $237,000 against debt owed to them by Holland, and Holland claims that this action by the Bank was a breach of fiduciary duty because these loans were not in default. The Bank contends that the Lafayette County property was its collateral, and that the Bank was merely offsetting the proceeds to release the collateral. Holland asserts that with no extended line of credit and no

---

[2]*See* 26 U.S.C.A. §1031 (Supp. 2008).

3

proceeds from the Lafayette County sale, he was unable to cover his margin calls, which led to significant financial losses and loss of goodwill in his cotton brokerage enterprise.

¶4.    Holland thus sold collateral (i.e., cattle) which the Bank held.  The Bank, in turn, considered Holland to have defaulted on the terms of his loans.  Subsequently, Holland entered into a workout agreement with the Bank to extend the loans to give him time to liquidate his assets to pay down the debt. Holland, by and through counsel, negotiated and entered into a workout agreement with the Bank, signed an amended promissory note, and then later signed a second amended promissory note.  Holland eventually paid off the Bank.

¶5.    Holland subsequently filed suit against the Bank, alleging in his complaint negligent misrepresentation, fraudulent misrepresentation, and breach of fiduciary relationship.  This Court appointed Senior Status Judge Robert Kenneth Coleman as Special Judge to preside and conduct all proceedings in this case. The Bank filed a motion for summary judgment, which was denied by Judge Coleman by way of an order dated February 24, 2006, and entered on March 3, 2006.  The Bank petitioned this Court for an interlocutory appeal, which was denied by a three-justice panel of this Court by order entered on March 29, 2006. *Renasant Bank v. Holland*, 2006-M-00436 (Miss. June 29, 2006). Thereafter, the Bank filed a Motion for Reconsideration of Denial of Petition for Permission to Appeal Interlocutory Order, which motion for reconsideration was denied by the en banc Court by order entered on June 29, 2006. On October 12, 2006,  Judge Coleman recused himself from the proceedings. By order entered on January 8, 2007, this Court appointed Judge L. Joseph Lee, Presiding Judge of the Court of Appeals of Mississippi, as Special Judge to preside and

4

conduct all proceedings in this case. On March 20, 2007, Judge Lee entered an order setting this case for trial on March 3, 2008. The Bank, on July 19, 2007, filed another motion asking the trial court to reconsider the previously-entered order denying summary judgment. Holland objected to the Bank's motion for reconsideration, asserting: (1) the case presented genuine issues of material fact; (2) the Bank's motion was untimely filed pursuant to Mississippi Rule of Civil Procedure 59(e); and (3) a successor judge was precluded from overruling a prior order entered by a predecessor judge.

¶6.     Judge Lee relied on *Mauck v. Columbus Hotel Co.,* 741 So. 2d 259 (Miss. 1999), as the basis for his reconsideration of Judge Coleman's previous denial of the Bank's motion for summary judgment insomuch as *Mauck* stood for the premise that a denial of summary judgment is not a final judgment on the merits, nor is it binding upon successor courts. *Mauck*, 741 So. 2d at 268. The trial judge further ruled that Holland had no basis for relief under the law given that the promise to lend money in the future is not a past or present fact and thus "not such a representation as will support recovery under a theory of negligent misrepresentation" (quoting *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990)). As to Holland's claim that the Bank's loan officer, William Jeffreys, promised him money beyond the terms of Holland's written contract with the Bank, the trial court found that Holland's claim failed under *Godrey, Bassett & Kuykendall Architects, LTD. v. Huntington Lumber & Supply Co.*, 584 So. 2d 1254, 1257 (Miss. 1991), because written contracts cannot be altered by prior oral agreements and because any parol evidence submitted to vary the written contract terms is inadmissible. The trial court further cited *Austin Development Co.*

***v. Bank of Meridian***, 569 So. 2d 1209 (Miss. 1990) in support of the Bank's argument that Holland had waived any cause of action against the Bank by executing the workout agreements and amendments to his promissory notes. Additionally, the trial court noted that Holland was unable to produce any evidence of damages to his business which could be attributed to the Bank's actions.

¶7.    In its opinion, the trial court did not specifically address the claim of breach of fiduciary duty relating to the failed escrow agreement.

## DISCUSSION

¶8.    Holland presents to this Court five issues for our review: (1) whether the trial court erred in granting the Bank's motion for summary judgment; (2) whether the trial court erred in ruling that Holland had waived his claims by signing renewal notes; (3) whether the successor trial judge erred in granting the Bank's motion for reconsideration of a predecessor judge's previous order denying summary judgment; (4) whether the Bank waived the claims in its motion for reconsideration; and (5) whether the trial court erred in granting summary judgment because other genuine issues of material fact were present and should have been resolved by a jury. Today's discussion combines Holland's first assignment of error with his fifth assignment of error, since the issue of damages discussed therein relates back to the elements of both fraudulent and negligent misrepresentation.

## I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE BANK'S MOTION FOR SUMMARY JUDGMENT.

¶9.	In reviewing a trial court's decision to grant summary judgment, this Court uses a *de novo* standard of review. ***Franklin County Mem'l Hosp. v. Miss. Farm Bureau Mut. Ins. Co.***, 975 So. 2d 872, 874 (Miss. 2008) (citing ***Callicutt v. Prof'l Servs. of Potts Camp, Inc.***, 974 So. 2d 216, 219 (Miss. 2007)).  The evidence must be viewed in the light most favorable to the non-moving party and if, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted in his favor.  Otherwise, the motion should be denied. ***Palmer v. Anderson Infirmary Benevolent Ass'n***, 656 So. 2d 790, 794 (Miss. 1995) (citing ***Brown v. Credit Center, Inc***., 444 So. 2d 358, 362 (Miss. 1983)).

¶10.	Mississippi Rule of Civil Procedure 56(c) states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A fact is material if it "tends to resolve any of the issues properly raised by the parties." ***Simpson v. Boyd***, 880 So. 2d 1047, 1050 (Miss. 2004) (quoting ***Palmer***, 656 So. 2d at 794). Even where the trial court finds that there is nothing before it that indicates a genuine dispute of material fact and finds that the movant is otherwise entitled to summary judgment, the trial court may "nevertheless be justified in denying summary judgment when, in its view, a full exposition of the facts may result in a triable issue or is warranted in the interest of justice." ***Great Southern Nat'l Bank v. Minter***, 590 So. 2d 129, 135 (Miss. 1991) (quoting ***Brown v. McQuinn***, 590 So. 2d 1098, 1095 (Miss. 1986)).

¶11.    Holland contends he informed Jeffreys that, in the event cotton prices dropped below eighty cents a pound, he would need an additional $200,000 (for a total of a $700,000) line of credit, for the purpose of covering margin calls in commodities trading.  He further claims that Jeffreys orally promised to extend the line of credit an additional $200,000 to cover margin calls.  Holland maintains that when cotton prices did drop, his business suffered losses due to the Bank's negligent and fraudulent misrepresentations regarding his line of credit.  On the other hand, the Bank maintains that Holland asked for an extended line of credit in the amount of $100,000 for the purpose of covering margin calls, which the Bank denied due to Holland not being able to produce more collateral.  The Bank further contends that Jeffreys did not have the authority to either grant or deny a $200,000 extended line of credit and that such action had to be presented to the Bank board for consideration.  Additionally, the Bank contends that Holland knew or should reasonably have known that Jeffreys lacked this authority.  Furthermore, the Bank contends that Holland cannot recover based on future promises for an extended line of credit, nor can any oral agreement alter the four corners of the written contract under the parol evidence rule.[3]

¶12.    The trial court ruled that Holland's claim of negligent misrepresentation failed because a promise to lend money is not a past or present existing fact but a "promise of

---

[3]The parol evidence rule "seeks to preserve [the] integrity of written agreements by refusing to permit contracting parties to attempt to alter [the] import of their contract through [the] use of contemporaneous oral declarations." Black's Law Dictionary 1006 (5th ed. 1979). *See also **Heartsouth, PLLC v. Boyd**, 865 So. 2d 1095, 1107-08 (Miss. 2003).

future conduct" and as such is "not such a representation as will support recovery under a theory of negligent misrepresentation." ***Bank of Shaw v. Posey***, 573 So. 2d 1355, 1360 (Miss. 1990); *see also* ***Moran v. Fairley***, 919 So. 2d 969 (Miss. Ct. App. 2005). Although the trial court did not specifically address the claim of *fraudulent* misrepresentation, the rule is the same. In cases of fraud, relief cannot be based on future promises, "except in some cases when a contractual promise is made with the present undisclosed intention of not performing it." ***Bank of Shaw***, 573 So. 2d at 1360. Holland cites ***Kidd v. Kidd***, 210 Miss. 465, 49 So. 2d 824, 827 (1951), for the same premise in support of his argument that Jeffreys promised him the extended line of credit with the undisclosed intent not to perform.

¶13.    In order to recover under a theory of fraudulent misrepresentation, a plaintiff must prove, by clear and convincing evidence, the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

***Bank of Shaw v. Posey***, 573 So. 2d 1355, 1362 (Miss. 1990) (citing ***Ezell v. Robbins***, 533 So. 2d 457 (Miss. 1988); ***Martin v. Winfield***, 455 So. 2d 762, 764 (Miss. 1984); ***Franklin v. Lovitt Equip. Co., Inc***., 420 So. 2d 1370, 1373 (Miss. 1982)). Even if the facts as espoused by Holland were accepted as true, the record reveals that Holland is unable to make a clear and convincing showing that Jeffreys was aware that there would be no extended line of credit, yet promised Holland the $200,000. As to the alleged misrepresentation, Holland's contention that Jeffreys promised him the $200,000 is flatly denied by Jeffreys and the Bank.

Holland admits that there was never an actual agreement to extend the line of credit by $200,000. He states that he told Jeffreys he might need the money at a future date based on the cotton market. Furthermore, Holland would have to prove that he had a right to rely on such a falsehood. However, Holland should have reasonably known that Jeffreys lacked authority to lend that amount of money and that any loan proposals would have to be brought before the Bank's board.

¶14. Absent a showing of fraud, the trial court was eminently correct in finding that the written loan agreement could not be altered by prior oral agreements. *See* ***Godfrey, Bassett, & Kuykendall Architects, LTD. v. Huntington Lumber & Supply Co.***, 584 So. 2d 1254, 1257 (Miss. 1991); *see also* ***Franklin v. Lovitt Equipment Co.***, 420 So. 2d 1370, 1372 (Miss. 1982). Furthermore, this Court has held: "[A] person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." ***Stephens v. Equitable Life Assurance Soc'y of the United States***, 850 So. 2d 78, 82 (Miss. 2003) (quoting ***Godfrey,*** 584 So. 2d at 1257) (citations omitted). The loan agreement provided for a $500,000 line of credit, and the trial court did not err in finding that any prior oral agreement that attempts to alter this written agreement is inadmissible.

¶15. In the alternative, Holland argues that, if not fraudulent, then Jeffreys's misrepresentation was negligent. This Court has distinguished fraudulent representation and negligent representation:

10

The basis for damages resulting from negligent misrepresentation is the lack of care; the basis for damages resulting from fraud is the want of honesty. *See Restatement of the Law of Torts* (*Second)* sections 549 and 552 (1977). The lack of care in negligent misrepresentation and the want of honesty in fraudulent misrepresentation in business transactions give rise to distinct causes of action, the one in tort, the other in fraud.

*Bank of Shaw,* 573 So. 2d at 1360 (quoting *First Money, Inc. v. Frisby*, 369 So. 2d 746, 750 (Miss. 1979)). In order to establish negligent misrepresentation, the following elements must be proven:

(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance. *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (Miss. 2007) (citing *Skrmetta v. Bayview Yacht Club, Inc*., 806 So. 2d 1120, 1124 (Miss. 2002)).

*Hazlehurst Lumber Co. v. Miss. Forestry Comm'n*, 983 So. 2d 309, 313 (Miss. 2008). The aforementioned elements must be proven by a preponderance of the evidence. *Bank of Shaw*, 573 So. 2d at 1360. As was the case with the fraudulent-misrepresentation allegation, Holland was unable to show that he reasonably could have relied on any assertions by Jeffreys that an additional $200,000 line of credit would be forthcoming, given that Jeffreys lacked actual and apparent authority to approve a loan agreement of such financial magnitude.

¶16. On the issue of damages, the trial court held that Holland failed to produce documentation in support of his claim that the Bank's refusal to grant his loan resulted in

losses to his cotton and farming business. Holland argues that the testimony of his accountant would establish that the Bank's alleged misappropriation of the $237,000 in proceeds from the Lafayette County land sale caused him to suffer severe monetary damages. Holland further argues that causal connection is a question of fact to be determined by a jury. *See e.g.*, **Glover v. Jackson State Univ.,** 968 So. 2d 1267, 1277 (Miss. 2007). Causation and damages are but two elements of Holland's claims. As discussed previously, Holland has failed to establish reasonable reliance on any assertions by Bank employee William Jeffreys. Therefore, the trial court did not err in finding as a matter of law that Holland was not entitled to recovery of monetary damages.

¶17. As to the claim of breach of fiduciary duty, Holland fails to show that there was an escrow agreement that would impose a fiduciary duty on the Bank or its agent. This Court has stated the following regarding fiduciary relationships:

> Although every contractual agreement does not give rise to a fiduciary relationship, in Mississippi such a relationship may exist under the following circumstances:
>
> > (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

**Robley v. Blue Cross/Blue Shield**, 935 So. 2d 990, 995 (Miss. 2006) (citing **Univ. Nursing Assocs., PLLC v. Phillips**, 842 So. 2d 1270, 1274 (Miss. 2003); **Carter Equip. Co. v. John Deere Indus. Equip. Co.**, 681 F.2d 386, 391 (5th Cir. 1982)). The Bank argues that this

12

escrow agreement was merely a proposed agreement that the Bank rejected on the basis that Holland could not produce more collateral. This Court is unable to find from the record before us any of the requisite elements for a fiduciary relationship where Holland has failed to produce evidence that the agreement existed. It is undisputed that Holland sold property that was the Bank's collateral, and that the Bank offset Holland's debt owed to them with the sales proceeds. Under the holding in *Wise v. Valley Bank*, 861 So. 2d 1029 (Miss. 2003), unless there was an agreement to the contrary, the relationship between Holland and the Bank was one of debtor/creditor. As to the duty owed by banks, this Court held in *Wise*:

> "The relationship between a bank and a depositor, without an agreement to the contrary, is simply one of debtor and creditor, and a deposit is not, ordinarily, a trust fund." *Deposit Guar. Bank & Trust Co. v. Merchants' Bank & Trust Co.*, 171 Miss. 553, 158 So. 136, 137 (1934) (citing *Moreland v. People's Bank of Waynesboro*, 114 Miss. 203, 263, 74 So. 828 (1917)). Furthermore, we have found that the relationship between a bank and its depositor is generally not a fiduciary one. *Merchants & Planters Bank of Raymond v. Williamson*, 691 So. 2d 398, 403 (Miss. 1997).

*Wise*, 861 So. 2d at 1033. Logically, "[t]he existence of a fiduciary duty must be established before a breach of that duty can arise." *Merchants & Planters Bank v. Williamson*, 691 So. 2d 398, 403 (Miss. 1997) (citing *Lowery v. Guar. Bank and Trust Co.*, 592 So. 2d 79, 83 (Miss. 1991)).

¶18. Assuming *arguendo* that Holland could establish a prime facie case of fraudulent or negligent misrepresentation or breach of fiduciary duty, those claims would be deemed waived based on Holland's signing the renewal notes and participating in the workout agreement with the Bank, as discussed *infra* in Holland's second assignment of error.

13

¶19.    For the reasons discussed, we find these combined assignments of error to be without merit.

## II.    WHETHER THE TRIAL COURT ERRED IN RULING THAT HOLLAND HAD WAIVED HIS CLAIM BY VIRTUE OF SIGNING RENEWAL NOTES.

¶20.    Holland argues that the workout agreement pertained to other loans and did not relate to the Bank's alleged misappropriation of the $237,000 from the Lafayette County land sale. Therefore, according to Holland, the trial court erred in granting summary judgment based on its view that Holland had waived his claims by participating in the workout agreement, because only a jury could make a factual finding as to the agreement's terms. The Bank argues that all possible defenses and claims relating to the notes and otherwise available to Holland were waived at the time Holland renewed the promissory notes and signed the workout agreement.

¶21.    The trial court cited *Austin Development Co., Inc. v. Bank of Meridian*, 569 So. 2d 1209 (Miss. 1990) in support of its granting the Bank's motion for summary judgment on this issue. In *Austin*, Austin D. Check was indebted to Bank of Meridian for approximately $400,000. *Id*. at 1210. Check requested a $50,000 loan from the Bank to finance a real estate development that was to be financed by Ronald Evans. The Bank requested more collateral, and Evans provided Check with a letter of credit in the amount of $50,000 drawn on Valley View Bank. *Id*. Check assigned the letter of credit to the Bank so that it could be collected on should the loan ever be in default. *Id*. Eventually Check's loan amount increased to $110,000, as did the letter of credit provided by Evans. When the loan matured on September

14

3, 1985, it went unpaid. The letter of credit was set to expire September 9, 1985; however, Bank of Meridian failed to collect on the letter of credit until September 12, 1985. *Id.* Valley View Bank refused to pay on the expired letter of credit, and Bank of Meridian threatened collection unless Check renewed the note in the principal amount of $110,000. *Id*. When the loan was again in default, the Bank of Meridian brought suit against Check and his company. Bank of Meridian was granted summary judgment by the trial court on the basis that the defendants had legally waived any defense to the notes and any other possible causes of action available at the time the renewal notes were executed and the interest was paid. *Id*. at 1211. Summary judgment in the *Austin* case was affirmed by this Court based on the rule promulgated in *Citizens National Bank v. Waltman*, 344 So. 2d 725 (Miss. 1977), *Brickell v. First National Bank,* 373 So. 2d 1013 (Miss. 1979), and *Turner v. Wakefield*, 481 So. 2d 846 (Miss. 1985), that renewal of the note constituted a waiver of all claims against the bank, including the claim of negligent impairment allegedly caused by the Bank of Meridian's loss of the $110,000 collateral entrusted to it by the defendants. *Id*. at 1212. In *Austin*, the Court also cited *Gay v. First National Bank*, 172 Miss. 681, 160 So. 904 (1935), which stood for the premise that "[w]here a party has full knowledge of all defenses to a note and executes a new note payable at a future date, he then waives all his defenses and becomes obligated to pay the new note." *Id*. (quoting *Gay*, 172 Miss. at 686, 160 So. at 905).

¶22.    Under the holdings in *Austin* and its progeny, assuming *arguendo* that the true facts are as asserted by Holland, the trial court did not err in finding that Holland had waived his claims by entering into the workout agreement and by signing the renewal notes. The

15

language in *Austin* is clear that by signing renewal notes, the defendants in that case had waived not only defenses to the notes but "any possible causes of action otherwise available to the defendants" against the Bank, including the negligence claim. *Austin,* 569 So. 2d at 1211. *Austin* is applicable to today's case insomuch as all possible claims that Holland could have had against the Bank, including the negligence claim, were waived by the workout agreement and renewal notes.

¶23.  We thus find, for the reasons stated, that this assignment of error has no merit.

> III.  **WHETHER THE SUCCESSOR TRIAL JUDGE ERRED IN GRANTING THE BANK'S MOTION FOR RECONSIDERATION OF AN EARLIER JUDGE'S ORDER DENYING SUMMARY JUDGMENT.**

¶24.  Holland contends that the trial court erred in granting the Bank's Motion for Reconsideration of Order Denying Summary Judgment, given that Judge Coleman already had entered an order denying summary judgment and given that Judge Lee already had set the date for trial. In support of this argument, Holland points to Mississippi Rule of Civil Procedure 60(b)(6), which states in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representation from a final judgment, order, or proceedings for the following reasons:
> . . . .
>
> (6) any other reason justifying relief from the judgment.

Holland claims that since no other subparagraph of Rule 60(b) applies (i.e., fraud, accident or mistake, etc.) and no new evidence was put forth by the Bank that would justify relief, the original order denying summary judgment entered by Judge Coleman should stand.

16

¶25. The Bank contends that Judge Lee was not bound by Judge Coleman's previous denial of its motion for summary judgment. This issue is laid to rest based on our prior case law. "An order denying summary judgment is neither final nor binding upon the court or successor courts." *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 268 (Miss. 1999) (citing *Great So. Nat'l Bank v. Minter*, 590 So. 2d 129, 133, 135 (Miss. 1991)). Moreover, "[a]t the point of final decision on the merits [the trial judge] was duty bound to apply the law to the record then before the court, regardless of any prior ruling denying summary judgment." *Id*. at 268-69. In other words, the law-of-the-case doctrine, wherein a successor judge is precluded from correcting errors of law made by the predecessor judge or from revising the predecessor judge's order or judgment on its merits, has no applicability where the order or judgment is not of a final character. *Mauck*, 741 So. 2d at 268. This is true even where there has been an intervening denial of a petition for permission to file an interlocutory appeal, given that this Court's denial of an interlocutory appeal is not a final judgment on the merits. *Id*.

¶26. Thus, Holland's reliance on Mississippi Rule of Civil Procedure 60(b)(6) is misplaced in that the rule applies only where the judgment or order is final. In accordance with *Mauck*, an order denying a motion for summary judgment is not a final judgment. For the reasons stated, Judge Lee was acting within his authority as trial judge in considering and granting the Bank's Motion for Reconsideration of Order Denying Summary Judgment. Accordingly, this assignment of error is without merit.

17

## IV. WHETHER THE BANK PREVIOUSLY HAD WAIVED THE CLAIMS PRESENTED IN ITS MOTION FOR RECONSIDERATION.

¶27. Finally, Holland argues that it was error for Judge Lee to take up the Bank's motion for reconsideration because the motion was filed seventeen months after the entry of Judge Coleman's order denying the Bank's previous motion and eleven months after this Court denied the Bank's interlocutory appeal. Furthermore, Holland contends that the Bank was dilatory in filing its motion and that such delay should be held to constitute a waiver of claims by the Bank (citing *East Mississippi State Hospital v. Adams*, 947 So. 2d 887, 891 (Miss. 2007) (failure to timely pursue affirmative defense, together with active participation in the litigation, served as a waiver of the affirmative defense)). *See also MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 181 (Miss. 2006) ("absent extreme and unusual circumstances–an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law.") (n. 9 omitted).

¶28. The Bank gives the following timeline in support of its assertion that it timely filed a motion for reconsideration. On January 8, 2007, an order was entered replacing Judge Coleman with Judge Lee. Renasant first discussed the motion for reconsideration via telephone conference with Judge Lee and Holland in January 2007. On January 23, 2007, a completed, bound set of all prior pleadings was prepared for Judge Lee for the purpose of reconsideration of the motion for summary judgment. Renasant caused two fact depositions

18

to be conducted on April 26 and 27, 2007, at its expense. In March 2007, there was a second telephone conference among the parties and the trial judge, with an order setting the case for trial immediately following. The Bank's Motion for Reconsideration of Order Denying Summary Judgment was filed on July 19, 2007. *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 181 (Miss. 2006), also stands for the premise that whether a motion is timely is to be a discretionary determination and is left to the trial court on "a case by case basis" considering the facts and circumstances. Thus, Judge Lee was well within his authority to consider and grant the motion. This Court has held that only "[t]he commencement of trial closes the season for granting motions for summary judgment." *Hurst v. Sw. Miss. Legal Servs. Corp.*, 610 So. 2d 374, 384 (Miss. 1992) (overruled on other grounds). Even in a case where trial was a few weeks away, this Court upheld a trial court's grant of summary judgment as being within the trial court's discretion where the threshold under Rule 56(c) was satisfied. *Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1163 (Miss. 2004). Accordingly, based on our discussion of this issue, we find this issue to be without merit.

## CONCLUSION

¶29. For the aforementioned reasons, the grant of summary judgment in favor of Renasant Bank f/k/a Peoples Bank & Trust Company and against Danny Holland by the Circuit Court for the Second Judicial District of Panola County is affirmed.

¶30. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, P.J., NOT PARTICIPATING.**