# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00250-SCT

*HORACE MANN LIFE INSURANCE COMPANY*
*AND LEO HAWKINS, JR.*

*v.*

*BETTY NUNALEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2005 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SAMUEL ERNEST LINTON ANDERSON |
| | ARTHUR F. JERNIGAN |
| ATTORNEYS FOR APPELLEE: | T. JACKSON LYONS |
| | PRECIOUS TYRONE MARTIN, SR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 07/19/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Betty Nunaley sued Horace Mann Life Insurance Company and Leo Hawkins, Jr., concerning the sale of an insurance policy.  After a jury trial conducted in the Humphreys County Circuit Court, Judge Jannie Lewis presiding, the jury found that Horace Mann and Hawkins had engaged in fraud and negligent misrepresentation and awarded Betty Nunaley $35,000 in compensatory damages and $1,935,000 in punitive damages.  From the trial court's entry of a final judgment consistent with the jury verdict, Horace Mann Life Insurance Company and Hawkins have appealed to this Court. Upon a thorough review of

the record and consideration of the applicable law, we reverse the Humphreys County Circuit Court's final judgment and render judgment here in favor of Horace Mann Life Insurance Company and Leo Hawkins, Jr.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On February 28, 2001, Betty Nunaley (Nunaley) met with Leo Hawkins, Jr. (Hawkins), an insurance agent for Horace Mann Life Insurance Company,[1] in her office at O.M. McNair Middle School in the Humphreys County School District[2] to discuss increasing the amount of the annuity she had previously purchased from Hawkins. Nunaley decided against increasing the annuity, and instead decided to purchase life insurance covering her two children, Cedric and Nadia.[3] Nunaley testified that Hawkins told her she could purchase two separate policies,[4] covering each child individually, which would provide $300,000 in death benefits for a monthly premium of $50, as that was what Nunaley could afford.

¶3.     Hawkins testified that he told Nunaley she could "[p]robably get about $300,000" worth of insurance. Hawkins then typed Nunaley's information into his laptop computer.

---

[1] For the sake of clarity, we will collectively refer to the defendants as "Horace Mann."

[2] Nunaley, at the time of trial, had been employed by the Humphreys County School District as an educator for 32 years. She was a guidance counselor at the time of the events surrounding this case and at the time of trial. Nunaley holds a bachelor's degree and two master's degrees.

[3] At the time of the application for the insurance policy, Cedric was twenty-four years old and Nadia was twenty-one years old.

[4] To date, no claim has ever been made on the insurance policy because both Cedric and Nadia are still living.

His computer program produced the application for the insurance policy, and he went over the benefits of the policy with Nunaley. The application clearly stated that the policy Nunaley was purchasing was a joint life, first-to-die policy with an option to convert the joint life, first-to-die policy to two single life policies. The policy would pay a death benefit of $256,514 in the event of the death of either Cedric or Nadia. If Cedric and Nadia died simultaneously, or within thirty-one days of each other, Nunaley would receive two payments of $256,514. Nunaley signed the application.

¶4. Nadia went to Hawkins's office to sign the application and undergo the required medical test for approval. Hawkins obtained Cedric's signature at Cedric's workplace, where Cedric also completed the required medical test. Both Nadia and Cedric signed the application. Hawkins then completed the application process.

¶5. Nunaley had stated on the application that Cedric was not a smoker; however, the medical test showed that Cedric was indeed a smoker. Horace Mann sent an amendment, effective May 17, 2001, to Hawkins with reduced coverage in the amount of $110,295. Hawkins mailed the amendment[5] to Nunaley's home. Cedric intercepted the amendment and signed this document as the owner of the policy, rather than an insured. Nunaley never saw

[5]Hawkins could not remember during his deposition whether he also mailed a copy of the policy with the amendment. At trial, Hawkins stated that Horace Mann's procedure is to send the amendment, along with a copy of the policy, to the agent to be given to the policyholder. Hawkins testified at trial that he remembered that he complied with Horace Mann's procedure and also mailed a copy of the policy along with the amendment to Nunaley's home.

the amendment since Cedric mailed the amendment to Horace Mann's headquarters. Horace Mann did not catch the error, and the policy was issued as amended.[6]

¶6.　Nunaley made no further contact with Hawkins. On January 21, 2004, Nunaley obtained a copy of her policy, along with the amendment. Nunaley alleges that this is the first time that she had seen a copy of the insurance policy with the amendment reducing benefits to $110,295. Further, Nunaley alleges that this is the first time that she learned that she did not have two, single life insurance policies covering Cedric and Nadia, but rather a joint life, first-to-die policy.

¶7.　Nunaley filed suit in the Humphreys County Circuit Court on February 11, 2004, alleging, *inter alia*: (1) fraud; (2) anticipatory breach of contract and breach of contract; (3) breach of fiduciary duty; (4) negligent misrepresentation and negligence per se; (5) negligent supervision; (6) conspiracy; (7) suppression/omission of information to the plaintiff; (8) post-sale fraudulent concealment; and (9) intentional spoliation of evidence. Horace Mann filed a Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement. The trial judge entered an order[7] directing Nunaley to file a more definitive statement within thirty

---

[6]To date, the policy, with the amendment, is still in effect. Nunaley has timely paid her premiums and continues to pay her premiums on the policy despite the jury's verdict. If one of her children were to die, Horace Mann would be obligated to pay $110,295, according to the amendment.

[7]This same order likewise provided that original defendants Horace Mann Insurance Company, Teachers Insurance Company, Horace Mann Educators Benefits Consulting Corp., and Horace Mann Service Corporation were dismissed from this cause of action.

days.  Horace Mann Educators Corporation[8] then filed a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim in Response to Plaintiff's More Definitive Statement.  Horace Mann then filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment, which the trial judge denied.  The trial judge also denied Horace Mann's Request for Certification for Interlocutory Appeal pursuant to M.R.A.P. 5(a).  This Court entered an Order denying Horace Mann's Petition for Interlocutory Appeal on June 17, 2005.

¶8.     A jury trial was duly conducted June 23 through June 25, 2005.  Nunaley called several witnesses to testify, including Matthew Thomas, an expert in insurance sales. Thomas testified that the language of the policy would reasonably lead Nunaley to believe that she was purchasing two, single life insurance policies rather than a joint life, first-to-die policy.  Thomas also testified that Nunaley should have signed the amendment as the owner, rather than Cedric, and that, additionally, Hawkins should have delivered the policy to Nunaley.

¶9.     Nunaley also called James Henley (Henley) to testify as an expert on damages. Henley testified that the appropriate method for calculating Nunaley's alleged damages was that of lost opportunity of investment rather than benefit of the bargain.  Henley testified that

_____

[8]Horace Mann Educators Corporation was also an original party to the suit but was dismissed at trial.  Horace Mann Educators Corporation is a holding company which owns 100% of the stock of Horace Mann Life Insurance Company.  Horace Mann Life Insurance Company is the only insurance company defendant participating in this appeal, because it was deemed at trial that the corporate veil of the holding company had not been pierced.

Nunaley's total damages were the premiums she paid, $2,243.10, plus lost earnings on those premiums in the amount of $1,913.84. Thus, Henley testified that Nunaley's total damages[9] were $4,156.94. Nunaley testified that she "probably" would not have purchased the policy had she known that it was a joint life, first-to-die policy rather than two single policies. Further, Nunaley claimed that she would not have purchased the policy had she known of the reduced coverage amount in the amendment. However, at this time, Nunaley continues to pay her premiums to keep the policy in force.

¶10.     At the close of Nunaley's case-in-chief, Horace Mann moved for a directed verdict pursuant to Miss. R. Civ. P. 50. The trial court granted the motion as to Nunaley's claims for emotional distress, breach of contract and civil conspiracy, but denied the motion as to the remaining counts/allegations in Nunaley's complaint.

¶11.     Horace Mann then called several witnesses, including Freda Young, the former Vice President of Life Administration for the company. Young testified that Nunaley could have rescinded the policy and received a full refund of her premiums, since she was unsatisfied with the amendment. Instead, Nunaley never rescinded the policy but continued to pay her premiums and filed the present lawsuit.

¶12.     After the presentation of the evidence and reading of the jury instructions, Nunaley's counsel, during closing arguments, asked the jury to return a verdict in favor of Nunaley and

---

[9]Although Nunaley alleged damages for emotional distress in her complaint, she did not put on any evidence to support her claim. Thus, her total proven compensatory damages at trial were $4,156.94.

6

to award her $25,000 in compensatory damages. The jury returned a unanimous verdict in favor of Nunaley as to the following: (1) that Hawkins engaged in fraud in dealing with Nunaley by clear and convincing evidence; (2) that Horace Mann engaged in fraud in dealing with Nunaley by clear and convincing evidence; (3) that Hawkins engaged in negligent misrepresentation by a preponderance of the evidence; (4) that Horace Mann engaged in negligent misrepresentation by a preponderance of the evidence; and (5) that Nunaley incurred damages as a result of the actions of the defendants. The jury awarded Nunaley $35,000 in compensatory damages.

¶13. At the close of the punitive-damages phase of the trial, Nunaley's counsel asked the jury to award punitive damages in the amount of $19,000,000. The jury returned a 9-3 verdict in favor of Nunaley, awarding punitive damages in the amount of $1,935,000. The trial court entered a final judgment on June 29, 2005, consistent with the jury verdict, and on July 1, 2005, Horace Mann filed a Motion for JNOV, New Trial, or Remittitur, which the trial judge denied. Horace Mann timely appealed to this Court.

## DISCUSSION

¶14. Questions of law are reviewed de novo by this Court. *Tyson Breeders, Inc. v. Harrison*, 940 So. 2d 230, 232 (Miss. 2006) (citing *Burnette v. Hartford Underwriters Ins. Co.*, 770 So. 2d 948, 950 (Miss. 2000)).

¶15. Horace Mann presents fourteen issues for this Court to decide: (1) whether there was fraud as a matter of law because the same policy language as that found in Nunaley's policy has been held to be clear and unambiguous; (2) whether Nunaley failed to establish the

7

elements of fraud; (3) whether Nunaley's allegation that she did not have a copy of her insurance policy relieved her of the duty to request another copy and to acquaint herself with an insurance contract she voluntarily maintained for years; (4) whether Nunaley ratified her life insurance contract; (5) whether compensatory damages were consistent with alleged damages, against the overwhelming weight of the evidence, were the result of jury confusion or were the product of bias, passion and prejudice; (6) whether the evidence supported an award of punitive damages; (7) whether the award of punitive damages was unconstitutional; (8) whether juror Bill Allen was improperly dismissed for cause after agreeing he could follow his oath to remain fair and impartial; (9) whether juror Charlie Gaugh was improperly singled out for sleeping during certain testimony; (10) whether James Henley's testimony regarding "lost opportunity" damages was admissible; (11) whether Nunaley was improperly permitted to introduce pattern and practice testimony during the compensatory phase of the trial; (12) whether Horace Mann was improperly denied jury instructions D-25 and D-27; (13) whether the ratification jury instruction was improperly amended; and (14) whether comments made by Nunaley's counsel during closing were prejudicial or justified by the evidence.

¶16.    However, because our decision in the case sub judice turns on two issues, only those issues will be discussed. These two issues are: (1) whether there was fraud as a matter of law because the same policy language found as that in Nunaley's policy has been held to be clear and unambiguous; and (2) whether compensatory damages were consistent with alleged damages, against the overwhelming weight of the evidence, the result of jury confusion or

8

the product of bias, passion and prejudice. We restate the issues for the sake of clarity in discussion.

## I. WHETHER THERE WAS FRAUD AS A MATTER OF LAW BECAUSE THE SAME POLICY LANGUAGE AS THAT FOUND IN NUNALEY'S POLICY HAS BEEN HELD TO BE CLEAR AND UNAMBIGUOUS

¶17. Horace Mann argues that the policy language has been found to be clear and unambiguous by the Mississippi Court of Appeals. In **Watts v. Horace Mann Life Ins. Co.**, 949 So. 2d 833 (Miss. Ct. App. 2006),[10] a case strikingly similar to the case sub judice, the Court of Appeals stated:

> The language of the policies was clear and unambiguous, despite Watts's arguments to the contrary. The policies clearly stated:
>
> **The simultaneous death benefit**
>
> If the Insureds die within 31 days of each other and this policy is in force on the date of the first death with all premiums paid, we will provide a simultaneous death benefit. Proof of each Insured's death must be received at the Home Office. The simultaneous death benefit will be determined as of the date the Insureds died.
>
> **The surviving Insured may purchase a new policy**
>
> Within 31 days after the date of an Insured's death, the surviving Insured may request a new policy. We will not require proof that the Insured is insurable. The new policy may be of the same coverage as this policy or any permanent plan of insurance currently being issued by us.

---

[10]The motion for rehearing was denied on October 17, 2006, and the mandate issued on November 7, 2006.

(emphasis in original).

There is no interpretation of these sections other than that the insurance would pay benefits for the death of both insureds only if they died within thirty-one days of each other. Otherwise, the second insured could automatically request a new policy, without showing proof of insurability, when the first insured died, provided that the request was made within thirty-one days of the death of the first insured. The copy provided to Watts stated in bold on the first page:

> Right to examine policy for 15 days. It is important to us that you are satisfied with this policy. We hope that it meets the insurance goals for which you planned. If you are not satisfied, you may return the policy to us or the agent from whom you purchased it, within 15 days after it is delivered to you, and receive a full refund of any premiums that you have paid.

Therefore, not only were the policies clear and unambiguous, but they also encouraged Watts to carefully review her copy to ensure that she was satisfied.

*Id.* at 836. *See also **Parker v. Horace Mann Life Ins. Co.***, 949 So. 2d 57 (Miss. Ct. App. 2006); ***Warren v. Horace Mann Life Ins. Co.***, 949 So. 2d 770 (Miss. Ct. App. 2006); ***Evans v. Horace Mann Life Ins. Co.***, 946 So. 2d 910 (Miss. Ct. App. 2006); ***Wheeler v. Horace Mann Life Ins. Co.***, 2007 Miss. App. LEXIS 146 (per curiam affirmed).

¶18.    Similarly, Nunaley's policy states:

**Your Plan of Insurance**
Your plan of insurance provides level term insurance on the lives of two insureds for 20 years.   While this insurance is in force, we will pay the insurance benefits when the first of the joint insureds dies.
. . .

**The insurance benefits we pay**
We will pay the insurance benefits in accordance with this policy's provisions upon receipt of due proof of the first death of one of the joint insureds.   These insurance benefits, determined as of the date of the Insured's death, will be the total of:

● the Insurance Amount[11] currently in force;

. . .

**The simultaneous death benefit**
If the Insureds die within 31 days of each other and this policy is in force on the date of the first death, we will pay the survivor benefit to the beneficiary of each insured. Proof of each insured's death must be received in the home office. The survivor benefit will be determined as of the date the surviving Insured dies. The survivor benefit will be equal to:
● the Insurance Amount currently in force;

. . .

**The surviving Insured may purchase a new policy**
Within 31 days of an Insured's death, the surviving Insured may request a new policy. We will not require proof that the Insured is insurable. The new policy may be the same coverage as this policy or any permanent plan of insurance currently being issued by us.

. . .

**You may change to single life plans**
While this policy is in force and both Insureds are living, you may exchange this policy for an individual level term insurance policy on each Insured. You will not need to provide proof that the insureds are insurable.

. . .

**Right to examine policy for 20 days–It is important for you to be satisfied with this policy. We hope that it meets your insurance goals. If you are not satisfied, you may return the policy to us or the agent from whom you purchased it within 20 days after it is delivered to you, and we will refund any premiums you have paid. Return of the policy shall void it as if it had never been issued.**

(Emphasis in original). Thus, as the Court of Appeals has held in similar cases, we hold that the language of Nunaley's policy was clear and unambiguous. Since the language of the policy does not support a claim for fraud, this issue, as asserted by Horace Mann, has merit.

---

[11]"Insurance Amount" is defined by the Policy as "the amount of level term life insurance issued under the policy as stated on the Policy data page," which was $110,295.00.

11

## II. WHETHER COMPENSATORY DAMAGES WERE CONSISTENT WITH ALLEGED DAMAGES, AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, THE RESULT OF JURY CONFUSION OR THE PRODUCT OF BIAS, PASSION AND PREJUDICE

¶19. Horace Mann argues in its brief that "a plaintiff cannot recover compensatory damages in an amount exceeding the loss she actually incurred." Nunaley's expert witness, James Henley, testified that Nunaley's damages were $4,156.94. Henley testified that Nunaley was entitled to "lost opportunity" damages because she could have invested the money she spent on premiums rather than pay for a policy she supposedly would not have purchased under all of the circumstances.

¶20. However, Nunaley has incurred no damages at all. In order to prove a claim for negligent misrepresentation, Nunaley must prove the following elements: (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance. *Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d 1120, 1124 (Miss. 2002) (citing *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992)); *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990) (citing *Berkline Corp. v. Bank of Mississippi*, 453 So. 2d 699, 702 (Miss. 1984)).

12

¶21.    Nunaley unquestionably fails to prove the fifth element – that she suffered damages as a direct and proximate result of such reasonable reliance on any perceived negligent misrepresentation which Hawkins/Horace Mann made to her.  Nunaley, to this day, has in effect a policy that will pay $110,295 *in the event of* the death of one of her children and she has made no claim on her insurance policy because, thankfully, neither of her children have died.  The record is simply devoid of any proof that Nunaley has suffered damages as a result of any negligent misrepresentation by the defendants. Accordingly, we find that Nunaley cannot prevail on her claim of negligent misrepresentation.

¶22.    Since Nunaley has suffered no compensatory damages, it necessarily follows that she is not entitled to an award of punitive damages.  **Bradfield v. Schwartz**, 936 So. 2d 931, 938 (Miss. 2006); Miss. Code Ann. § 11-1-65(c) (Supp. 2006).  We thus likewise find this issue asserted by Horace Mann to have merit.

**CONCLUSION**

¶23.    We hold that the plain language of Nunaley's policy did not constitute fraud and that Nunaley cannot prove the necessary element of damages in her negligent misrepresentation claim.  Accordingly, the Humphreys County Circuit Court's judgment entered against Horace Mann Life Insurance Company and Leo Hawkins, Jr., and in favor of Betty Nunaley, in the amount of $35,000 in compensatory damages and $1,935,000 in punitive damages, is reversed and judgment is rendered here in favor of Horace Mann Life Insurance Company and Leo Hawkins, Jr.

¶24.    **REVERSED AND RENDERED.**

13

**SMITH, C.J., WALLER, P.J., EASLEY, DICKINSON AND LAMAR, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT. DIAZ, P.J., AND GRAVES, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**