April J. CROWLEY, Plaintiff

v.

ADAMS & EDENS, P.A., and
CitiMortgage, Inc.,
Defendants.

Civil Action No. 3:09CV170TSL–FKB.

United States District Court,
S.D. Mississippi,
Jackson Division.

July 2, 2010.

Harvey Curtis Crowley, The Crowley Law Firm, PLLC, Jackson, MS, for Plaintiff.

Craig Lawson Slay, Adams & Edens, Brandon, MS, Reid S. Manley, Burr & Forman, LLP, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the separate motions of defendants CitiMortgage, Inc. and Adams & Edens, P.A., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff April J. Crowley has responded to the motions and the court, having considered the memoranda of authorities, together with attachments, concludes that both motions are well taken and should be granted.[1]

In September 2007, plaintiff April Crowley obtained a $209,150 mortgage loan from Realty Mortgage Corporation for the purchase of a home in Brandon, Mississippi. Plaintiff's note and deed of trust were acquired by CitiMortgage immediately af-

---

1. The court notes that plaintiff has moved to strike the affidavit of Therese Hart, which was submitted by CitiMortgage in support of its motion for summary judgment. In the court's opinion, that motion should be denied.

ter the loan proceeds were distributed. In late December 2007, shortly after obtaining the mortgage, plaintiff lost her job and was out of work for the month of January 2008; in February 2008, she started a lower-paying job. As a result of being unemployed, plaintiff missed her January mortgage payment. Plaintiff made mortgage payments in February and March, but remained one month in arrears. By May, as a result of the addition of fees associated with her delinquency, plaintiff had fallen two months behind in her mortgage payments. Plaintiff has testified that throughout this time, CitiMortgage telephoned her "relentlessly," and wrote to her, as well, regarding her delinquency.

In April 2008, CitiMortgage's Loss Mitigation Department sent plaintiff a "Workable Solutions" application, which is part of a CitiMortgage program designed to provide delinquent borrowers with potential options for getting caught up on their payments, including (as described by plaintiff) loan modification, forbearance, spreading out the missed payments over a certain number of future payments or over the balance of the loan, or simply extending the loan period by tacking the missed payments onto the end of the loan. Plaintiff completed and returned the application. While she waited for a response from CitiMortgage, she continued to make her regular monthly payments. In June, CitiMortgage responded, and offered to allow plaintiff to make up the arrearage by paying an additional $500 each month for five months. Plaintiff states that at that time, none of the other options was offered to her, so she agreed to the repayment plan, even though she knew it would be a struggle to pay an additional $500 monthly.

Plaintiff asserts that notwithstanding that she had agreed to a repayment plan and was making her payments, she continued to receive delinquency letters. When she received such a letter in late August stating she was three months behind in her mortgage payments, she called CitiMortgage, and insisted that, in fact, she was not three months behind. When the CitiMortgage representative explained that the system was not allowing her payments to post properly because she was under a repayment/forbearance plan, plaintiff requested that the plan be cancelled so that her payments could be posted correctly to her account.

Thereafter, in November, plaintiff received a delinquency letter which reflected she was two months behind. Plaintiff testified that after receiving this letter, she telephoned CitiMortgage and expressed concern that she continued to be behind in her payments. She states that in response, the representative suggested to her the Workable Solutions alternative; but when plaintiff told the representative that she had gone through the Workable Solutions application process and all that had been offered was an option to pay an extra $500 each month, which she could not afford, the representative told her about a different program, "the loss mitigation program."

Plaintiff testified in her deposition that the CitiMortgage representative told her that this was a new, government program that President Bush had enabled before leaving office, and that under the program, for which she qualified since her mortgage was under $250,000, if she became three months behind on her mortgage payments and completed a Workable Solutions application (which doubled as an application for the loss mitigation program), she would automatically be placed in the program. She claims the representative further advised her that once she was in the loss mitigation program, she could not be foreclosed on and CitiMortgage would automatically modify her loan.

Plaintiff claims that immediately completed and mailed a Workable Solutions application to CitiMortgage; and she skipped a payment so that she would be three months in arrears and be placed in the loss mitigation program. Yet in early January, plaintiff received correspondence advising her she remained delinquent and requesting that she make arrangements for payment. Although she called Citi-Mortgage and tried to make a payment, she was told by the CitiMortgage representative that her payment could not be accepted until the program was worked out. That same day, she got home and had a letter from the Adams & Edens law firm, dated January 19, 2009, advising the firm had been retained to foreclose on the property and intended to immediately commence foreclosure proceedings. Plaintiff telephoned CitiMortgage, and was told she would need to speak to her loss mitigation specialist (though no one seemed to know who that was), or to an attorney with Adams & Edens. Plaintiff testified that was concerned that perhaps CitiMortgage had not received her Workable Solutions application so she faxed it in again to be sure it was received. She claims that throughout this process, she was repeatedly assured by CitiMortgage agents that any foreclosure proceedings would be put on hold once her application was received and she was put in the loss mitigation program.

On February 11, plaintiff received an email from CitiMortgage stating that her application for assistance had been received and assigned to a loss mitigation specialist, who would need about thirty days to review her application and who would call her within that thirty days. The email specifically recited that "foreclosure activity may continue until a foreclosure prevention treatment has been approved or completed." However, prior to hearing from a loss mitigation specialist, plaintiff received correspondence from Adams & Edens, dated March 9, 2009, advising that a foreclosure sale had been scheduled for April 1, 2009. According to plaintiff, at that point, she realized that what CitiMortgage agents had told her about the loss mitigation program was untrue and that her home was going to be foreclosed. She promptly hired an attorney, and on March 23, 2009, plaintiff filed the present action against CitiMortgage for intentional and/or negligent misrepresentation and estoppel, and against Adams & Edens for violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. A week later, plaintiff filed a petition for bankruptcy protection in order to avoid foreclosure on her home.

In its motion for summary judgment, CitiMortgage broadly argues that plaintiff's claims against CitiMortgage, all of which relate to an alleged oral agreement by CitiMortgage to put plaintiff in a loss mitigation program and put any foreclosure process on hold, are barred by Mississippi's statute of frauds and fail as a matter of law since there is no written document evidencing such an alleged agreement. See Miss.Code Ann. § 15–3–1 ("An action shall not be brought whereby to charge a defendant or other party . . . upon any contract for the sale of lands . . . unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith. . . ."); *Canizaro v. Mobile Commc'ns Corp. of Am.*, 655 So.2d 25, 29 (Miss.1995) (explaining that the modification of a contract within the statute of frauds must also be in writing). CitiMortgage argues additionally and/or alternatively that even if the statute of frauds does not preclude her claims, she still cannot prevail as she lacks proof to support her various claims, including proof that she has suffered any damage as a

result of CitiMortgage's alleged misrepresentations.

■ If plaintiff were seeking specific performance of, or to recover damages for breach of CitiMortgage's alleged oral agreement to forbear from foreclosing on the property once she met the specified criteria, i.e., if she were suing to enforce the alleged oral agreement or for breach of that agreement, then the statute of frauds would apply (but an issue would then be presented as to whether CitiMortgage was estopped from asserting the statute of frauds). *See Thompson v. First American Nat. Bank,* 19 So.3d 784, 788 (Miss.Ct.App. 2009) ("Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds."). In fact, however, plaintiff's property was not foreclosed, and since plaintiff's delinquency was addressed and has been or is being satisfied by payments through her bankruptcy case/plan, then plaintiff's claim for a declaratory judgment preventing Citi-Mortgage from foreclosing is moot.[2]

■ Plaintiff's claim for estoppel clearly is not barred by the statute of frauds. In *Thompson, supra,* the court set forth the well-settled "general rule concerning estoppel and its application to the statute of frauds," as follows:

> It is universally conceded that the doctrine of equitable estoppel may be invoked to preclude a party to a contract from asserting the unenforceability of a contract by reason of the fact that it is not in writing as required by the statute

of frauds. As is often said, the statute of frauds may be rendered inoperative by an estoppel in pais. Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds. This is based upon the principle established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.

*Id.* at 788 (quoting *Sanders v. Dantzler,* 375 So.2d 774, 776 (Miss.1979)). Thus, while the putative oral agreement may not be enforceable under the statute of frauds, it may be enforceable under a theory of promissory estoppel, which will support a claim for damages.[3]

■ Likewise, the statute of frauds defense cannot defeat plaintiff's claim for fraud. In *Walker v. U–Haul, Inc.,* 734 F.2d 1068 (5th Cir.1984), *modified slightly on rehearing,* 747 F.2d 1011 (1984), after U–Haul raised the plaintiff franchisee's monthly rent from $400 to $2500, the plaintiff sued to recover damages in tort for U–Haul's alleged fraudulent representation that rent would be increased only in proportion to the plaintiff's income. The plaintiff claimed that U–Haul had no intention of maintaining the rent at a reason-

---

**2.** Plaintiff's complaint, which did include a count for such a declaratory judgment, was filed before plaintiff filed her bankruptcy petition.

**3.** CitiMortgage relies on *Thompson* in support of its argument that plaintiff's claims herein are barred by the statute of frauds. *Thompson* is factually similar, in that it involved a comparable representation by an employee of

the lender to a delinquent borrower that the lender would not foreclose if the borrower made a partial payment of his delinquency (rather than paying the arrearage in full). Despite this representation/ promise, the lender foreclosed. However, in *Thompson,* unlike the case at bar, the plaintiff's suit was for damages for wrongful foreclosure, i.e., for breach of the lender's agreement that it would not foreclose.

able level at the time it promised to do so. U–Haul argued that evidence of the alleged promise was barred by Mississippi's statute of frauds, and more specifically, that Mississippi would not allow tort liability to be predicated on a promise that is itself unenforceable under the statute of frauds. The plaintiff countered that while the statute of frauds would bar specific performance of the promise, it did not prevent him from recovering damages in tort. The Fifth Circuit agreed with the plaintiff, and concluded that Mississippi follows the majority rule that an action for misrepresentation may be maintained, even when the promise itself is unenforceable by the statute of frauds. *Id.* at 1078 (citing *Lewis v. Williams,* 186 Miss. 701, 191 So. 479 (1939), *Welch v. Lawson,* 32 Miss. 170 (1856), and W. Prosser, *Handbook of the Law of Torts* 730 (4th ed. 1971)). *See also Crystal Springs Ins. Agency Inc. v. Commercial Union Ins. Co.,* 554 So.2d 884, 885 (Miss.1989) (adopting *Walker* rationale and holding that the Mississippi statute of frauds does not bar an action for damages based on fraud even though the promise underlying the fraud is itself unenforceable under the statute of frauds); *Restatement (Second) of Torts* § 530, comment c (noting that person misled by a misrepresentation of one's intention to perform has a cause of action in tort as an alternative to a contract action and that a misrepresentation of one's intention is actionable even "when the agreement is oral and made unenforceable by the statute of frauds . . . .") (cited in *Walker* ).

■ In the court's opinion, the statute of frauds similarly is no bar to plaintiff's claim of negligent misrepresentation, which does not seek to enforce the agreement or damages for its breach, but rather is an action in tort seeking damages in tort. *Cf. Walker,* 734 F.2d at 1078 (concluding that statute of frauds did not bar claim for breach of fiduciary duty seeking

damages incurred in reliance on oral promise that was itself unenforceable due to statute of frauds).

CitiMortgage has argued, alternatively, that plaintiff cannot prevail on any of her claims because she cannot prove essential elements of the claims. In order to evaluate the viability of plaintiff's claims, it is first necessary to identify the specific representations which plaintiff has claimed. As alleged in her complaint and further illuminated in her deposition testimony, plaintiff charges that when she called CitiMortgage in December 2008, concerned because she was two months behind on her payments, CitiMortgage agents told her that CitiMortgage had a new loss mitigation program under which she could obtain a loan modification so long as she met the program's three criteria, which were that (1) the amount of her mortgage was less than $250,000; (2) she was delinquent in her loan payments by at least three months; and (3) she submitted a "Workable Solutions Application"; and that once these criteria were met, placement in the program was automatic. Plaintiff has further testified that after she missed a third payment, she was repeatedly assured by CitiMortgage agents that once her Workable Solutions application was received and she was placed in the program, any foreclosure activity would be put on hold. Finally, plaintiff has asserted that in late January 2009, after she received the first letter from Adams & Edens advising that the law firm had been hired to commence foreclosure proceedings, two CitiMortgage employees told her in two separate telephone conversations that CitiMortgage was not at that time foreclosing on her home.

The last of these claimed representations was not alleged in plaintiff's complaint, nor the subject of any deposition testimony, but rather surfaced for the first

time in an affidavit submitted by plaintiff with her response to CitiMortgage's summary judgment motion. In fact, plaintiff's response to CitiMortgage's motion is based primarily on her recent assertion that CitiMortgage agents told her the company was not foreclosing on her home at a time when it was doing just that. CitiMortgage has moved to strike any reference in plaintiff's affidavit to this alleged misrepresentation on the basis that it directly contradicts her deposition testimony and is nothing more than a blatant attempt by plaintiff to avoid summary judgment. In the court's opinion, this motion is well taken.

Plaintiff claims in her affidavit that in two conversations with CitiMortgage agents in late January 2009, she "directly asked CitiMortgage agents if CitiMortgage was foreclosing on [her] property," and both times, the agents responded in the negative. She goes on to state:

> Unbeknownst to me, Citimortgage was, in fact, presently foreclosing on my property. I discovered this information in a subsequent phone conversation with an employee of Adams & Edens, P.A. Citimortgage's agents simply lied to me when they told me Citimortgage was not presently foreclosing on the property. At the time I discovered Citimortgage's misrepresentations, foreclosure proceedings were only days away. Because I relied upon the false statements of Citimortgage's agents, foreclosure of my property was imminent. The only alternative I had was to file for bankruptcy protection to stop the foreclosure.

> I would never have filed for bankruptcy if Citimortgage had not made these false representations to me. The only reason I was forced to file for bankruptcy was because of Citimortgage's representations to me, including their representation to me Citimortgage was not foreclosing upon my property, when in fact, it was.

The assertions in plaintiff's affidavit regarding her conversations with CitiMortgage agents in late January 2009 cannot be squared with her deposition testimony. In her deposition, plaintiff testified unequivocally that when she first attempted to speak with CitiMortgage agents about the foreclosure after receiving notice from Adams & Edens that the law firm had been retained to initiate foreclosure proceedings, the CitiMortgage agents with whom she spoke declined to discuss the foreclosure, told her she would have to speak with CitiMortgage's attorneys and gave her Adams & Edens' phone number. She stated that she did not recall having any other discussions with CitiMortgage at that point in time. She further testified that when she called CitiMortgage a couple of days later to check on the status of her Workable Solutions application, she was told she should fax her application (as there was no record of her having submitted an application), and she was specifically told that "[b]ecause of the foreclosure it was in an emergency state, ... and [said it needed to be sent] to a different number so that it would be processed quicker." She said she was also told to write on the application, "Action in Foreclosure Urgent," which she did. Regarding this conversation, plaintiff recalled only that she was told she needed to fax her Workable Solutions application to a different fax number because her account was in foreclosure.

Based on plaintiff's deposition testimony, there can be no doubt that she knew from and during her conversations with the CitiMortgage agents in late January that her property was being foreclosed. Plaintiff's claims in her affidavit that CitiMortgage agents told her in these conversations that CitiMortgage was not then presently foreclosing on her property is directly contrary to her deposition testimony, and therefore, will be stricken. *See*

*S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996) (an affidavit in opposition to summary judgment that contradicts without explanation deposition testimony is properly disregarded).[4]

■ The elements of an intentional or fraudulent representation, which must be proven by clear and convincing evidence, are: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *McCord v. Healthcare Recoveries, Inc.,* 960 So.2d 399, 406 (Miss.2007).

■ In order to establish negligent misrepresentation, the following elements must be proven by a preponderance of the evidence: "(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance." *Horace Mann Life Ins. Co. v. Nunaley,* 960 So.2d 455, 461 (Miss.2007) (citing *Skrmetta v. Bayview Yacht Club, Inc.,* 806 So.2d 1120, 1124 (Miss.2002)).

■ The elements of promissory estoppel are: (1) the making of a promise, even though without consideration, (2) the intention that the promise be relied upon and in fact is relied upon, and (3) a refusal to enforce it would virtually sanction the perpetuation of fraud or would result in other injustice. *C.E. Frazier Const. Co. v. Campbell Roofing and Metal Works, Inc.,* 373 So.2d 1036, 1038 (Miss.1979).

Among other positions, CitiMortgage argues that plaintiff's negligent misrepresentation claim fails because it is not based on past or present fact but rather on alleged promises of future conduct, i.e., that if she became three months delinquent, "she *would be placed* in a loss mitigation program which would prevent foreclosure," and that she "*would be placed* in a loss mitigation program and that CitiMortgage *would not foreclose* on her property." (Comp. ¶¶ 12, 15)(emphasis added). *See Bank of Shaw v. Posey,* 573 So.2d 1355, 1360 (Miss.1990) (a "promise of future conduct" is "not such a representation as will support recovery under a theory of negligent misrepresentation"). Relatedly, it asserts that her fraud claim fails because she has presented no evidence that the CitiMortgage employees who made the alleged misrepresentations had the present intention not to perform the alleged promise when such misrepresentations were allegedly made. *See id.* (explaining that, unlike negligent misrepresentation, an intentional fraud claim may be based on a statement involving the speaker's future conduct, but "even in cases where fraud is alleged, a promise of future conduct does not meet the requirement of a 'representation' unless the promise was made with the present intent not to perform").

Notwithstanding that plaintiff does not challenge CitiMortgage's position on these points,[5] in the court's view, plaintiff's testi-

---

4. Plaintiff has not responded to the motion to strike.

5. Instead, in response to the motion, plaintiff has simply changed her position as to the misrepresentation on which she is purportedly suing, and claims that the new misrepresentation is not vulnerable to attack on these bases. The court has concluded that any evidence of this new misrepresentation should be stricken.

mony could be fairly construed as charging that CitiMortgage's agents misrepresented the nature and terms of CitiMortgage's loss mitigation program, which in the court's opinion, would constitute a representation of existing fact. As described by plaintiff, CitiMortgage's employees told her, in effect, that under its then-existing program, she was entitled to specific benefits, namely, a loan modification and foreclosure forbearance, if she met the program's defined criteria.[6] Accordingly, this is not a basis for dismissal of her negligent misrepresentation claim.

■ Plaintiff's fraud claim fails, however, because plaintiff has no proof that the CitiMortgage agents with whom she spoke (whose identities are unknown) knew that their alleged representations regarding the program were false. In her deposition, plaintiff stated that in March 2009, after she received a letter from Adams & Edens advising that a date had been set for the foreclosure sale, it became apparent to her that everything she had been told about the loss mitigation program was untrue; yet she testified that she did not think CitiMortgage's employees had intentionally misled her. Plaintiff stated:

> I guess they didn't understand it (the loss mitigation program) so they didn't explain it to me properly, or they just didn't tell me the truth. I don't know. *But I don't think they intentionally didn't tell me the truth.* I think they just—miscommunication was so bad between them. (Emphasis added).

Plaintiff's testimony in this regard, coupled with the absence of any evidence otherwise suggesting an intent to mislead, necessarily precludes a finding that CitiMortgage knowingly misrepresented the program or intended to mislead plaintiff, and similarly precludes any reasonable finding that these agents made the representations about the program with the present intent not to perform. *Chris Albritton Const. Co., Inc. v. Pitney Bowes, Inc.,* 304 F.3d 527, 531 (5th Cir.2002) (stating that "[w]ithout evidence suggesting intention to mislead, Plaintiff [ ] lack[s] a key element of [her] burden of proof. . . .").

CitiMortgage argues additionally that plaintiff's fraud and negligent misrepresentation claims fail because plaintiff cannot establish that she reasonably relied upon the alleged statements by CitiMortgage agents that she would automatically be put in the loss mitigation program, and that this would prevent any foreclosure activity. In this regard, CitiMortgage points out that every document provided to plaintiff by CitiMortgage relating to the available loss mitigation options, including all correspondence and loss mitigation forms, informed plaintiff in clear and unmistakable terms that CitiMortgage could not and would not suspend collection or foreclosure activity until a written loan workout agreement was completed between plaintiff and CitiMortgage. *See Watson v. First Commonwealth Life Ins.,* 686 F.Supp. 153, 155 (S.D.Miss.1988) (granting summary judgment on fraud claim, stating "[t]he uncontroverted evi-

---

**6.** Plaintiff makes a similar assertion in her affidavit, stating therein that CitiMortgage's agents told her "in no uncertain terms that all I had to do to cure the deficiency was become three (3) payments in arrears and they would take this action. This representation was not contingent, nor was it in the nature of 'might,' 'may,' 'could,' or other equivocal terms." CitiMortgage has moved to strike this part of plaintiff's affidavit on the basis that it is inconsistent with her deposition testimony, in which she stated several times that she was told that she "would be put in the plan" when she got three months behind on her payments. However, in her deposition, plaintiff also testified that she was told that, in substance and in effect, that placement in the program was automatic if and when she met the criteria. In the court's opinion, her affidavit is not inconsistent with her deposition testimony.

dence establishes that at the time of the alleged oral misrepresentation the actual terms of the loan commitment were available to [the plaintiff] on the acknowledgement form, a short, simple document devoid of small print. [The plaintiff] had no right to rely on the alleged misrepresentation."). However, plaintiff has testified that the CitiMortgage agents with whom she spoke specifically told her that because the loss mitigation program was a "brand new program," CitiMortgage did not have forms for the program yet and she should disregard contrary statements in the existing forms (including the Workable Solutions application and, presumably as well, form letters). Thus, it cannot be said as a matter of law that plaintiff's reliance was unreasonable.

However, to prevail on any of her claims, plaintiff must show that she relied to *her detriment* on defendant's alleged misrepresentations. *See Fibre Corp. v. GSO America, Inc.,* No. CIVA5:04CV170DCB–JMR, 2006 WL 522379, 9 n. 8 (S.D.Miss. Mar. 1, 2006) (noting that a promissory estoppel claim and a negligent misrepresentation claim "both involve detrimental reliance on the representation"); *Southern Mortg. Co. v. O'Dom,* 699 F.Supp. 1227, 1230 (S.D.Miss. 1988) (observing that "promissory estoppel, like fraud, requires proof of detrimental reliance") (citing *PMZ Oil Co. v. Lucroy,* 449 So.2d 201, 206 (Miss.1984)).[7] In the court's opinion, plaintiff has failed to present competent evidence to sustain her burden in this regard. CitiMortgage points out that at the time of the alleged misrepresentations, plaintiff was already severely delinquent on her mortgage payments, having fallen a month behind in January 2008 and becoming and remaining two months from and after the summer of 2008. Under the terms of her note, CitiMortgage had no obligation to make alternative payment arrangements with plaintiff, and it had the absolute right to accelerate plaintiff's debt and to commence foreclosure proceedings from the time plaintiff first became delinquent on her payments. The agreement states:

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

* * *

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not yet been paid and all the interest that I owe on the amount.

. . .

22. Acceleration; Remedies.

* * *

If the default is not cured on or before the date specified [in the acceleration

---

**7.** In its motion, CitiMortgage declares that "Plaintiff's Estoppel Claim Fails As A Matter of Law," and argues that she cannot prevail on her claim of "equitable estoppel" as she cannot prove detrimental reliance. Plaintiff argues in response that CitiMortgage is procedurally barred from obtaining summary judgment as to her claim for *"promissory* estoppel" since it failed to brief the issue. However, plaintiff's complaint does not purport to allege a claim of *"promissory* estoppel" but rather generally alleges "estoppel," and in any event, both promissory and equitable estoppel require proof of detrimental reliance, the absence of which is the basis for CitiMortgage's motion. *See Solomon v. Walgreen Co.,* 975 F.2d 1086, 1091 (5th Cir.1992) (setting forth elements of promissory and equitable estoppel). *See also Suddith v. Univ. of Southern Miss.,* 977 So.2d 1158, 1180 (Miss. Ct.App.2007) ("Promissory estoppel differs from equitable estoppel (only) 'in that the representation is promissory rather than as to an existing fact.' ").

notice], Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.

For her part, plaintiff acknowledges she was already two months behind on her payments when she called CitiMortgage in December 2008, and in fact, the record indicates she called because she was concerned that she was in a precarious position. She contends, though, that it is her understanding that what triggered the foreclosure process was her becoming *three months* in arrears, and she thus submits that missing that third payment in reliance on the representations of the Citi-Mortgage agents was an obvious *detrimental* change in position. Plaintiff has offered no evidence to show where she got the idea that becoming three months behind would trigger foreclosure action, to show that CitiMortgage initiated foreclosure proceedings because she had fallen three months behind, or to show that it would not have foreclosed had she continued to remain only two months delinquent.

Plaintiff also suggests she detrimentally relied on the CitiMortgage agents' misrepresentations because, but for those misrepresentations, she would have found a way to get caught up on her mortgage payments. However, plaintiff had been delinquent for nearly a year at the time of the alleged misrepresentations and had been unable to become current. In fact, plaintiff had entered a loan modification that would have allowed her to get caught up by paying an extra $500 monthly for six months; but plaintiff testified that she could not afford the payments. There is nothing in the record to substantiate plaintiff's assertion that she would have been able to timely obtain funds with which to pay her mortgage when she had gone for a year without doing so.

As plaintiff has failed to submit evidence to demonstrate detrimental reliance, her claims fail as a matter of law. *See Thompson,* 19 So.3d at 789 (holding that promissory estoppel argument failed as it would not "sanction an injustice or perpetuate a fraud for a bank to collect what is rightfully owed to it").

For all of these reasons, the court concludes that CitiMortgage is entitled to summary judgment and its motion will therefore be granted.

■■■ Adams & Edens has moved for summary judgment on plaintiff's claim against it under the FDCPA on the basis that it made the disclosures required by 15 U.S.C. § 1692f(6), and, that it was not a "debt collector" under the FDCPA since all actions undertaken by Adams & Edens on behalf of its CitiMortgage were for the purpose of enforcing the security interest it held in plaintiff's real property. *See Kaltenbach v. Richards,* 464 F.3d 524, 527 (5th Cir.2006) (holding that "[b]y the plain language of the statute, ... a person whose business has the principal purpose of enforcing security interests but who does not otherwise satisfy the definition of a debt collector is subject only to § 1692f(6)"). Plaintiff purports to oppose CitiMortgage's motion, but concedes her position is foreclosed by *Kaltenbach.*

Based on the foregoing, it is ordered that defendants' motions for summary judgment are granted. It is further ordered that CitiMortgage's motion to strike certain portions of plaintiff's affidavit is granted, in part, as set forth herein, and it is ordered that plaintiff's motion to strike the affidavit of Therese Hart is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.