# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 9, 2013

No. 12-60595
Summary Calendar

Lyle W. Cayce
Clerk

LOUIS PENNELL, JR.; PAMELA PENNELL,

Plaintiffs–Appellants

v.

WELLS FARGO BANK, N.A.; WELLS FARGO HOME MORTGAGE,

Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Mississippi, Biloxi
Civ No. 1:10–cv–00582–HSO–JMR

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiffs–Appellants Louis Pennell, Jr. and Pamela Pennell ("the Pennells") brought several claims against Defendants Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage ("Wells Fargo") after losing their home following their mortgage default. The district court granted summary judgment in favor of Wells Fargo on all claims. The Pennells appeal only as to their negligent misrepresentation claim. Because we hold that Wells Fargo's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

representations were promises of future conduct, incapable as a matter of law of supporting a negligent misrepresentation claim, we affirm the district court's grant of summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Pennells built a home in Ocean Springs, Mississippi ("the home") in 2002, with the help of a $200,000 loan from First Federal Bank. In 2007, the Pennells refinanced the home, executing a $375,500 promissory note in favor of Wells Fargo Bank. The home was used as security for the loan. Pursuant to the promissory note, the Pennells agreed to repay the loan in monthly installments of $2,777.14. The promissory note provided that the Pennells would be considered in default if full monthly payments were not made on the date that they were due. Wells Fargo Bank was authorized to accelerate the loan balance in the event of default. Under the terms of the note, Wells Fargo was to serve the Pennells notice prior to acceleration, advise them of an opportunity to cure, and warn them that failure to cure could result in foreclosure. Wells Fargo was also to notify the Pennells in writing if it elected to sell the house.

The Pennells fell behind on payments. Over an almost two-year period, Wells Fargo sent the Pennells twelve letters warning them of impending acceleration on the balance if they did not cure their default. The letters also warned that foreclosure could be initiated after acceleration. Mrs. Pennell acknowledged receiving the letters. After receiving letters for about a year, the Pennells contacted Wells Fargo about a loan modification. Wells Fargo sent the Pennells a letter offering a Trial Period Plan. The letter stated that if the Pennells qualified and complied, they could avoid foreclosure. The letter also stated that the Pennells' outstanding payments would be reviewed for a possible loan modification. The Pennells signed the Trial Period Plan Agreement in September 2009, then timely made their October, November, and December

No. 12-60595

payments. It is undisputed that the Pennells made no further payments after December 2009, although the Pennells argue that they were told by Shannon Garcia, a Wells Fargo representative, that the loan modification would be processed faster if the Pennells did not make payments in the interim.

Wells Fargo began foreclosure proceedings in January 2010. Mr. Pennell testified that they may have received a letter informing them that Wells Fargo had initiated foreclosure. Regardless, the Pennells acknowledge that Morris & Associates, the attorneys hired to execute the foreclosure, sent the Pennells a letter on February 9, 2010, informing them of the foreclosure.

After Wells Fargo Bank initiated foreclosure on the home, the Pennells continued to receive communications from Wells Fargo concerning the loan modification. The Pennells contend they were told not to worry about the default and foreclosure letters they were receiving, because they were in the loan modification process. Specifically, the Pennells testified they received a letter from Wells Fargo Bank dated May 27, 2010. The letter requested a signed copy of the Pennells' tax return, and gave them three weeks to provide it. Mrs. Pennell testified that she faxed the tax return immediately. She testified that she called Shannon Garcia, who said the tax return had been received, and that "we would be closing up this next week, we would be finishing everything." Mrs. Pennell testified that she took Garcia's statement to mean that the loan modification would be completed.

A foreclosure sale occurred on June 3, 2010. The Pennells contacted Wells Fargo and Morris & Associates about rescinding the foreclosure sale. Wells Fargo sent the Pennells a letter on June 14, 2010 stating that if the Pennells paid $30,242.15, the loan could be reinstated. Mr. Pennell withdrew the necessary funds from his 401(k) plan. Mr. Pennell testified that when he called Wells Fargo Bank, he was told Wells Fargo had decided not to accept a payoff to rescind the foreclosure.

3

No. 12-60595

Wells Fargo Home Management sent the Pennells a letter dated August 2, 2010, formally denying their request to rescind the foreclosure. The letter stated that foreclosure proceedings were valid because no viable plan or loan modification was approved before the foreclosure sale. Mr. Pennell acknowledged that he did not receive a loan modification.

### B. Procedural Background

On December 22, 2010, the Pennells filed a complaint against Wells Fargo Bank, Wells Fargo Home Management, and Morris & Associates, alleging that the Defendants wrongly foreclosed on their home, among other claims. In a lengthy opinion, the district court granted summary judgment for the Defendants. The Pennells appeal only the district court's grant of summary judgment as to their claim for negligent misrepresentation against Wells Fargo Bank.

## II. JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

### A. Standard of Review

The Court of Appeals reviews a district court's grant of a motion for summary judgment de novo, applying the same standard as the district court. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228 (5th Cir. 2010). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The district court's jurisdiction was based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. In a diversity action, a federal court applies the substantive law of the state in which it sits. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). Moreover, the parties agree that Mississippi substantive law governs.

**B. Analysis**

The Pennells allege that Wells Fargo negligently misrepresented the loan modification process through their letters concerning the Trial Period Plan. The district court held that the representations did not concern existing facts, but instead were promises of future conduct, and therefore not actionable under Mississippi law. Further, the district court held that even if Wells Fargo made representations of existing fact, the Pennells could not reasonably have relied on the representations because they contradicted the loan documents and other correspondence from Wells Fargo.

To establish a claim for negligent misrepresentation in Mississippi, the Pennells must prove the following five elements: (1) a misrepresentation or omission of a fact; (2) that the representation or omission was material or significant; (3) that the person/entity charged with the negligence failed to exercise the degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance. *Mladineo v. Schmidt*, 52 So. 3d 1154, 1164–65 (Miss. 2010).

To establish the first element, the plaintiff must prove that the defendant misrepresented an existing fact, not just a promise of future conduct. *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992). Under Mississippi law, a promise to do or to refrain from doing an act in the future does not concern an existing fact, and thus cannot support a negligent misrepresentation claim. *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990); *Moran v. Fairley*, 919 So. 2d 969, 973 (Miss. Ct. App. 2005).

In reaching its conclusion that Wells Fargo's representations were promises of future conduct, the district court relied on several cases. First, the district court discussed three Mississippi state cases that found that promises to lend

money or build a hotel could not, as a matter of law, support a negligent misrepresentation claim. *See Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 96, 99–100 (Miss. 2008); *Skrmetta v. Bayview Yacht Club Inc.*, 806 So. 2d 1120, 1124–25 (Miss. 2002); *Bank of Shaw*, 573 So. 2d at 1360. Although it was not required to do so, the district court provided persuasive authority as well. The district court cited several federal cases, including one from the Fifth Circuit, interpreting Texas law to find that a promise to modify a loan was a promise of future conduct that could not support a negligent misrepresentation claim. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 205 (5th Cir. 2012) (unpublished) (promising not to foreclose on home while loan modification was pending was not an existing fact, but rather a promise of future conduct).

The Pennells challenge the district court's conclusion, arguing that Wells Fargo's representations concerned existing facts. The Pennells specifically argue that Wells Fargo misrepresented the nature and terms of the modification process, and cite two cases that hold that misrepresenting a modification process can constitute an existing fact that can support a claim for negligent misrepresentation. *See Crowley v. Adams & Edens, P.A.*, 731 F. Supp. 2d 628, 637 (S.D. Miss. 2010) (applying Mississippi law); *Poppelreiter v. GMAC Mortg., LLC*, No. 1:11CV008–A–S, 2011 WL 2690165, at *6 (N.D. Miss. July 11, 2011) (same). The district court in *Poppelreiter* adopts the reasoning of *Crowley*, however in *Crowley*, the district court highlights that the plaintiff's summary judgment evidence was conclusive that loan modification would be forthcoming, *Crowley*, 731 F. Supp. 2d at 635–36 & n.6, unlike here. Regardless, while these two cases apply Mississippi law, they are federal district court opinions, not Mississippi state court opinions. Federal district court cases are not authoritative statements of state law; a state's supreme court is the final arbiter of its own state law issues. *See Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986). The Pennells do not dispute that the Mississippi Supreme Court's

interpretation of its own laws is supreme, but instead incorrectly argue that federal district court cases be given consideration as well. Regardless how the federal district court has recently interpreted Mississippi state law in *Crowley* and *Poppelreiter*, Mississippi state law is clear. A creditor's representation of possible future events is a promise of future conduct. *Holland*, 3 So. 3d at 99–100.

The Pennells argue that the Trial Period Plan included representations of existing fact, by claiming to be a possible solution. The plan stated only that the Pennells "may qualify" and that the chance to avoid foreclosure was conditioned on approval of their application. The Period Plan was by its nature a promise to evaluate a potential future change. A promise to perform an act in the future can only support a negligent misrepresentation claim if the promisor had the present intent not to perform. *Bank of Shaw*, 573 So. 2d at 1360. The Pennells did not submit any evidence indicating that Wells Fargo invited them to apply for a loan modification while simultaneously harboring the intent to not perform.

The Pennells also argue that the May 27, 2010 and June 14, 2010 letters constituted misrepresentations of existing fact. The May 27 letter states that Wells Fargo must receive the Pennells' tax returns before the process can move forward, which is not a representation of an existing fact, but instead an indication that Wells Fargo will act in the future. *See Spragins*, 605 So. 2d at 780 (mortgagee's promise to buy a property in the future was not a representation of existing fact). Likewise, the June 14 letter contains a future promise to reinstate the loan *if* the Pennells paid the $30,242.15, and thus cannot support a negligent misrepresentation claim.

Because Wells Fargo's representations concerned promises of future conduct, the Pennells' negligent misrepresentation claim is foreclosed. Thus, we do not reach the district court's finding that the Pennells did not reasonably rely on the representations, as required for a negligent misrepresentation claim.

No. 12-60595

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Wells Fargo.